13-63 (JLC)

EXHIBITS A-E

# EXHIBIT A

18.    **FIRST/LAST REFUSAL**

*A)*    Upon expiration of the Term, FIGHTER agrees to negotiate exclusively and in good faith with PROMOTER regarding the extension or renewal of the Term for a period of ninety (90) days following the expiration of the Term.

*B)*    In the event no such agreement is reached between FIGHTER and PROMOTER during the aforementioned ninety (90) day period, FIGHTER may negotiate with other promotional entities, subject to PROMOTER's right to match the terms of any agreement offered to FIGHTER by such other promotional entity. PROMOTER's right to match shall begin at the end of the ninety (90) day period and last for one (1) year.

*C)*    FIGHTER shall provide PROMOTER with prompt written notice of any such offer, containing full details in regards thereof.   Such notice shall constitute an exclusive, irrevocable offer to contract with PROMOTER on the same terms and conditions.  PROMOTER shall have fourteen (14) business days after receipt of said notice to either accept or reject said offer.  If PROMOTER rejects said offer, FIGHTER may accept said offer with the promotional entity on the same terms and conditions and without any modifications thereto.  If the offer is modified in any material way, such modification shall give rise to another option for PROMOTER to match the terms of the offer as modified.

*D)*    PROMOTER's failure to accept any offer shall not constitute a waiver of last refusal with respect to subsequent offers.

## 24.   **CHOICE OF LAW/VENUE**

The law of the State of New Jersey applicable to contracts executed and to be fully performed in the State of New Jersey shall govern this Agreement, and FIGHTER's execution of this Agreement shall constitute his consent to the exclusive jurisdiction of the Courts of the State of New Jersey and the United States Courts located in New Jersey and to serve all process pursuant to the applicable section of the New Jersey Court Rules and/or Statutes with respect to matters relating to this Agreement or any dispute between the parties; provided, however, that actual Bouts will be conducted under the rules of the Commission in whose jurisdiction the Bout is to take place.

# **EXHIBIT B**



November 1, 2012

**VIA EMAIL AND CERTIFIED MAIL**

Eddie Alvarez
3208 Saxon Place
Philadelphia, PA 19114

**_RE: Exclusive Negotiation Period_**

Dear Mr. Alvarez,

Reference is made to your long-term Promotional Agreement with Bellator Sport Worldwide, LLC ("Bellator"). As you know, pursuant to Paragraph 8 of your Promotional Agreement, the Extension Term of the Agreement concluded on October 12, 2012.

Bellator is hereby agreeing to conditionally waive its rights to the period of exclusive negotiation with you as set forth in Paragraph 18(A) of the Promotional Agreement, provided that this waiver is <u>only</u> with respect to negotiations you may engage in with Zuffa, LLC. Your exclusive negotiation period obligations and Bellator's rights with respect to any and all other third party combat sports promotions that may wish to engage in negotiations with you as set forth in Paragraphs 18(B)-(C) of the Promotional Agreement shall be stayed.

This waiver will only be effective and you may only begin negotiations with Zuffa, LLC (and only Zuffa, LLC) upon your signature below, which shall acknowledge the terms and conditions of this limited waiver.

For avoidance of doubt, upon your signature below, you are permitted to negotiate with and entertain offers from, and only from, Zuffa, LLC. Upon receipt of such an offer, you are thereafter obligated to produce to Bellator a true copy of the proposed agreement with Zuffa, LLC, at which time Bellator shall have fourteen (14) business days from receipt of the full agreement to consider whether it will match the terms of the offer. Should Bellator elect to match the offer, no further offers may be entertained by you and you will be obligated to contract with Bellator on the terms that Bellator agreed to match.

This letter is written with all rights reserved.

Sincerely,

Tracey S. Lesetar
*General Counsel*

*Agreed and Accepted:*

EDDIE ALVAREZ                                        Date: 11-2-11

5000 BIRCH STREET, SUITE 7100, NEWPORT BEACH, CA 92660
PHONE: (949) 222-3400 · FAX: (949) 222-3401 · WWW.BELLATOR.COM

# **EXHIBIT C**

**From:** Neal Tabachnick <ntabachnick@wrslawyers.com>
    **To:** bjorn <bjorn@bellatorfc.com>; bjorn <bjorn@bellator.com>; dinesandenglish <dinesandenglish@aol.com>; tracey <tracey@bellator.com>
    **Cc:** Glenn H. Robinson <glenn@authenticsportsmgmt.com>
**Subject:** Eddie Alvarez
    **Date:** Wed, Nov 28, 2012 6:02 pm
**Attachments:** Alvarez_Eddie_Promotional_Agreement_8_fights_11_28_12.PDF (194K), Alvarez_Eddie_Signing_Bonus_11-07-12.DOC (1415K)

---

TO:


Bellator Sport Worldwide, LLC

935 North Kenter Avenue

Suite 100

Los Angeles, California 90049

Telecopier (312) 245-9807
Email: bjorn@bellatorfc.com


and


Patrick C. English, Esq.

Dines and English, L.L.C.
685 Van Houten Avenue

Clifton, New Jersey 07013
Telecopier: (973) 778-7633

Email: dinesandenglish@aol.com


Dear Bjorn, Patrick and Tracey:


Attached please find the proposed Promotional and Ancillary Rights Agreement and Signing Bonus Letter of Agreement (the "Collective Proposed Agreement"), both between Zuffa, LLC and Eddie Alvarez, transmitted to you for the sole purpose of Bellator's matching rights pursuant to its Agreement with Eddie Alvarez (signed by Eddie Alvarez on October 28, 2008) and the terms of your Exclusive Negotiation Period letter of November 1, 2012.


These materials are transmitted to you in strictest confidence for the sole express purpose of Bellator considering its said matching right, and no other purpose. Bellator should destroy all these materials once that procedure has been completed.

As you know, Bellator has 14 business days from today within which to assert in writing that it will match all terms of this submitted Collective Proposed Agreement with Zuffa, LLC; otherwise, Eddie Alvarez is free to enter into this Collective Proposed Agreement with Zuffa, LLC.

Please contact me if you have any questions or comments.

Reserving all client and client representative rights.

Best,

Neal


Neal Tabachnick, Esq.

Partner
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd.
9th Floor
Los Angeles, California 90064
PH:  310-478-4100  Ext. 6627
FAX: 310-479-1422
E-Mail:  ntabachnick@wrslawyers.com


This message contains information which may be confidential and privileged.  Unless you are the addressee (or authorized to receive e-mails for the addressee), you may not use, copy or disclose to anyone this message or any information contained in this message.  If you have received this message in error, please advise the sender by reply e-mail to ntabachnick@wrslawyers.com, and delete the message.  Thank you.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by U.S. Treasury Regulation Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

# EXHIBIT D

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

## PROMOTIONAL AND ANCILLARY
## RIGHTS AGREEMENT

**THIS PROMOTIONAL AND ANCILLARY RIGHTS AGREEMENT** (the "**Agreement**") is made as of the date set forth below (the "**Effective Date**") by and between **ZUFFA, LLC,** a Nevada limited liability company d/b/a Ultimate Fighting Championship® with offices at 2960 W. Sahara Avenue, Las Vegas, NV 89102 ("**ZUFFA**") and Eddie Alvarez ("**Fighter**").

### RECITALS

A.       ZUFFA is in the business of, among other things, promoting mixed martial arts fighting competitions throughout the world under the trade name of Ultimate Fighting Championship® ("**UFC**") and desires to serve as the promoter for Fighter's future bouts for a period of time, provided that Fighter grants to ZUFFA certain promotional rights and ancillary rights, with such ancillary rights being granted to ZUFFA in perpetuity, as set forth herein; and

B.       Fighter is a professional mixed martial arts fighter and desires to obtain the promotional services of ZUFFA for Fighter's future bouts for a period of time, and Fighter is willing to grant to ZUFFA certain promotional rights and ancillary rights, with such ancillary rights being granted to ZUFFA in perpetuity, as set forth herein.

**NOW, THEREFORE,** in consideration of the foregoing, the agreements and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, ZUFFA and Fighter agree as follows:

### ARTICLE I
### GRANT OF PROMOTIONAL RIGHTS

1.       The Fighter hereby grants to ZUFFA the exclusive unrestricted worldwide right to secure, promote, arrange and present any and all mixed martial arts contests (individually, a "**Bout**" and collectively, the "**Bouts**") to be engaged in by Fighter during the Term (as defined herein) and any Extension Term (as defined herein), including all rights to stage each Bout and to sell tickets of admission thereto (the "**Promotional Rights**") and to exploit the Ancillary Rights (as defined herein) to each Bout in all media, now known or hereafter devised throughout the world in perpetuity.

### ARTICLE II
### GRANT OF ANCILLARY RIGHTS

2.1       Fighter hereby grants to ZUFFA the exclusive worldwide right to use, display, disseminate, edit, reproduce, print, publish and make any other use of the name, sobriquet, image, likeness, voice, persona, signature, and biographical material of Fighter and all persons associated with Fighter (collectively, the "**Identity**"), in any medium in connection with advertising, marketing, exploiting and promoting the UFC brand and each Bout and the exploitation of all rights pertaining thereto as provided herein and all rights to each Bout electronic and other (the "**Ancillary Rights**" and, collectively with the Promotional Rights, the "**Rights**").

2.2       The Promotional Rights and Ancillary Rights shall be the sole property of ZUFFA throughout the world, which property ZUFFA shall hold free and clear from any and all claims of Fighter

1

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

or anyone claiming through Fighter. For the avoidance of doubt, ZUFFA shall hold the Ancillary Rights described herein in perpetuity, which rights shall survive even the death of the Fighter.

2.3     The Rights include the following:

a.      The right to receive and retain all site fees, live-gate ticket and other revenues, subscription revenues, advertising fees, sponsorship fees, and the like.

b.      All media, including, but not limited to, motion picture, radio, television (which term whenever referred to herein shall include, without limitation, live or delayed, interactive, home or theater, over-the-air broadcast, pay, pay-per-view, satellite, closed circuit, cable, subscription, Video On Demand, Near Video On Demand, Subscription Video On Demand, multi-point, master antenna, or other), telephone, wireless, computer, CD-ROM, DVD, any and all Internet applications (including, without limitation, netcasting, podcasting, direct download, streamed webcasting, internet channels (*e.g.*, Youtube) or any other form of digital media download or web syndication), films and tapes for exhibition in any and all media and all gauges, including but not limited to video and audio cassettes and disks, home video and computer games, arcade video games, hand-held versions of video games, video slot machines, photographs (including raw footage, out-takes and negatives), merchandising and program rights, in connection with or based upon the UFC brand, the Bouts or activities pertaining to the Bouts, including but not limited to, training, interviews, press conferences, weigh-ins and behind-the-scenes footage for the Bouts (the "**Pre-Bout Events**"), post-fight interviews and press conferences (the "**Post-Bout Events**") and any parts thereof on a commercial, sustaining, theatrical or other basis, and by any and all means, methods and devices whatsoever, now existing or hereafter devised.

c.      The right to sell, assign, lease, license, sublease, use or otherwise dispose of any and all of the Rights and the results of the exercise thereof, and to authorize, license and grant the right to exercise any of the Rights and to retain the proceeds therefrom.

d.      The right to do all things necessary for the full and complete use, exploitation and exercise of the Rights, including the right to promote and exploit all rights granted hereunder and receive and retain the results of the exercise thereof, and the right to negotiate, enter into and perform any and all agreements relating to the Rights for the proper production and promotion of radio and television advertisements, publicity, and broadcasts relating to the UFC brand, the Bouts, the Pre-Bout Events and the Post-Bout Events.

e.      All right, title and interest in and to any and all recordings, including without limitation, television, radio, Internet, wireless and motion picture films, and the video and audio cassettes of, or based upon the UFC brand, the Bouts, the Pre-Bout Events and the Post-Bout Events, and the right to secure in the name of ZUFFA (or that of its nominee) copyright and other protection to the fullest extent available in the United States and all other countries of the world where such protection is available.

f.      The unrestricted right to use, edit, disseminate, display, reproduce, print or publish in any media the Identity of Fighter for the purpose of advertising, promotion, publicity, merchandising and exploitation of the UFC brand, the Bouts, the Pre-Bout Events and Post-Bout Events, including the use of the Identity of Fighter to advertise any commercial product or service of a ZUFFA sponsor or any network, station or other exhibitor, for which activities Fighter hereby waives his personal

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

right of privacy; provided, that ZUFFA agrees that it shall not authorize or permit the Identity of Fighter to be used as a direct or implied endorsement of any product, service, sponsor or commodity.

        g.      The unrestricted right to use, edit, disseminate, display, reproduce, print, publish and make any other uses of the Identity of Fighter in connection with the development, manufacturing, distribution, marketing or sale of any and all interactive devices, home video and computer games, arcade video games, hand held versions of video games, video slot machines, CD-ROMS, DVDs, Internet applications, wireless, video and audio cassettes and disks, apparel (such as t-shirts, hats and jackets), banners, buttons, posters, jewelry, photographs, souvenirs, programs, toys, merchandising tie-ups and advertisements, and any and all other similar type products, including the sleeves, jackets and packaging for such products, hereunder made by any method now known or hereafter devised.  Additionally, Fighter acknowledges the existence of UFC Video Games (as defined herein) developed, being developed or to be developed by various companies, including, but not limited to, Electronic Arts Inc.  Fighter further acknowledges that the Rights granted herein to ZUFFA shall be <u>exclusive</u> with respect to any UFC Video Game, and any derivatives of such video games created by ZUFFA or its licensees.  "**UFC Video Game**" shall mean any video game created by Zuffa or its licensees and branded with UFC, Pride, WEC, Strikeforce or any brand subsequently developed, owned or acquired by ZUFFA or any of its agents or subsidiaries.  ZUFFA acknowledges and agrees that Fighter shall be paid a bonus, as determined in the sole discretion of ZUFFA, for each console version of a UFC Video Game in which Fighter appears.  Notwithstanding the immediately preceding sentence, ZUFFA agrees that if it does not utilize the Identity of Fighter in a UFC Video Game within three (3) years of the Effective Date, that the Rights granted by Fighter to ZUFFA pursuant to this Section 2.3(g) shall become non-exclusive and Fighter shall have right to exploit his Identity in video games that are not UFC Video Games.

        h.      The non-exclusive right to use a three minute excerpt clip of the recording of any bout, including any non-ZUFFA/UFC bout, in which Fighter was a participant (to the extent that Fighter possesses the rights thereto or can reasonably obtain such rights), for the purpose of publicizing a Bout, which clip shall be provided to ZUFFA upon request therefore.

        i.      To the extent Fighter owns or controls, in whole or in part, the copyrights and other right, title and interest in and to any tattoos etched or otherwise displayed on the bodies of Fighter and any persons associated with Fighter, the irrevocable, perpetual non-exclusive, transferrable, assignable and sub-licensable right and license throughout the world, to use, publish, reproduce, distribute, display and exhibit such tattoos in any manner and on or through any media, in connection with ZUFFA's exercise of any of its other Rights hereunder.

    2.4    To the extent that Fighter is deemed to have, retain or otherwise possess any right, title or interest in or to all or any portion of the UFC brand, any Bouts, any Pre-Bout Events or Post-Bout Events, or any works created or produced pursuant to or in connection with this Agreement (collectively, the "<u>**ZUFFA IP**</u>"), then for the consideration set forth herein, Fighter hereby transfers, conveys and assigns same to ZUFFA and shall execute all documents and undertake all actions necessary to effect the clarification of ownership of all right, title and interest in and to such ZUFFA IP to ZUFFA and to allow ZUFFA to apply for and maintain any copyright and trademark registrations and other intellectual property registrations or issuances with respect to the ZUFFA IP and any renewals or extensions thereof, Fighter hereby irrevocably designates and appoints ZUFFA and ZUFFA's employees, agents, representatives, affiliates, licensees, designees, successors and assigns ("<u>**ZUFFA's Representatives**</u>") as Fighter's agent and attorney-in-fact to act for and on Fighter's behalf and to execute and file all such documents consistent herewith (that ZUFFA is unable after reasonable efforts to obtain Fighter's

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

signature on) and to do all other lawfully permitted acts necessary to carry out the provisions of this Agreement.

2.5     Fighter waives, discharges and releases ZUFFA and ZUFFA's Representatives from any and all claims; (i) of infringement of any right of Fighter in, to or respecting the ZUFFA IP and (ii) arising from ZUFFA or ZUFFA's Representatives' use of the Identity of Fighter or another exploitation of the Rights in any manner contemplated or set forth herein (including, without limitation, any claims based on Fighter's moral rights in the ZUFFA IP or for inspection, approval, damages for libel, intellectual property infringement or violation of Fighter's rights of privacy or publicity).

2.6     Fighter acknowledges and agrees that Fighter shall have no right of approval or consultation with respect ZUFFA's exercise of any Rights granted or assigned to it hereunder and nothing in this Agreement shall obligate ZUFFA to exercise any of its Ancillary Rights.

ARTICLE III
PROMOTION

3.1     Each Bout shall be a mixed martial arts contest, one-on-one fight between Fighter and an opponent designated by ZUFFA, subject to Fighter approval not to be unreasonably withheld, delayed or conditioned, conducted pursuant to the rules and regulations of the athletic commission, federation or official authority having jurisdiction over the Bout or ZUFFA pursuant to Section 3.7 (the "**Athletic Commission**"). Fighter and ZUFFA shall comply with and be bound by the rules and regulations of the Athletic Commission. For Bouts that occur in a jurisdiction or country without an Athletic Commission, the provisions of Section 3.7 shall control. In the event that Fighter does not approve of an opponent designated by ZUFFA, ZUFFA may, at its election and in accordance with the terms and conditions of Section 4.3 of this Agreement, extend the Term of this Agreement for the period required to designate another opponent for Fighter or six (6) months, whichever is longer.

3.2     ZUFFA shall promote and Fighter shall participate in the minimum number of Bouts set forth in Article IV below.  For purposes hereof, ZUFFA shall be deemed to have complied with its obligations to promote any Bout if ZUFFA shall have made an offer to Fighter to promote a Bout in accordance with the provisions hereof and Fighter shall have refused to participate.  If a Bout is the undercard to a main event and the main event is canceled or postponed for any reason, the failure of such Bout to take place shall not be deemed non-performance by ZUFFA and ZUFFA shall not be liable for Fighter's Purse associated therewith (as defined herein).

3.3     Fighter shall cooperate and assist in the advertising, publicity, and promotion of (i) the Bouts, (ii) any and all rebroadcast of the Bouts in any media whatsoever, (iii) other UFC bouts, (iv) other UFC events and broadcasts, and (v) the sale of UFC merchandise, including making appearances at a reasonable number of press conferences, interviews and other sponsorship and promotional activities (any of which may be telecast, broadcast, recorded or filmed) at times and places reasonably designated by ZUFFA, without additional compensation therefore. For such promotional activities, ZUFFA will arrange and pay for Fighter's reasonable travel, hotel and meal accommodations.

3.4     All Bouts shall be on dates and at sites to be designated by ZUFFA, in its sole and absolute discretion. If any Bout is postponed for any reason except ZUFFA's non-performance, the Bout Agreement applicable to such Bout shall determine the rights of the parties and in addition thereto, the

4

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

Term shall be extended, at ZUFFA's election, by a number of days equal to the number of days between the date originally scheduled for the Bout and the date on which the Bout occurs.

3.5     During the Term, ZUFFA shall have the exclusive right to promote all of Fighter's bouts and Fighter shall not participate in or render his services as a professional fighter or in any other capacity to any other mixed martial art, martial art, boxing, professional wrestling, or any other fighting competition or exhibition, except as otherwise expressly permitted by this Agreement.

3.6     Notwithstanding the foregoing, in the event Fighter is not then a UFC champion, Fighter is permitted, subject to the prior written consent of ZUFFA, which consent may be granted or withheld in ZUFFA's sole discretion, to contract with other promoters or to engage in any mixed martial arts bout or fighting competition or exhibition promoted by other promoters (an "**Other Bout**") during the Term provided (i) such Other Bout is not televised by any domestic or international television network, station, cable system, satellite or other provider or via Internet or wireless exhibition; (ii) such Other Bout is scheduled for and takes place on a date which is more than sixty (60) days before or more than thirty (30) days after any non-championship Bout and more than ninety (90) days before or more than thirty (30) days after any championship Bout; (iii) a copy of any agreement for any Other Bout shall have been furnished to ZUFFA at least one (1) week prior to its execution by Fighter; and (iv) a fully executed copy of any such agreement is provided to ZUFFA within five (5) days of execution by Fighter. Except in compliance with the foregoing limited exception, Fighter shall not, during the Term, grant promotional or other rights which conflict with the Rights. Furthermore, Fighter expressly agrees that this Agreement shall be automatically extended for an additional one hundred twenty (120) days for each non-UFC promoted mixed martial arts competition or exhibition that Fighter participates in, and any reference to the Term herein shall be deemed to include any such extension(s).

3.7     Any and all Bouts that occur in a jurisdiction without an Athletic Commission shall be conducted pursuant to the statutes, rules and regulations of the State of Nevada in effect at the time of the Bout, including, but not limited to, the Unified Rules of Mixed Martial Arts (the "**Nevada Rules**"); for the protection of the health and safety of the Fighter, to promote fairness in the administration of the Bout, and to preserve the integrity of the sport of mixed martial arts. Fighter may appeal any advisory opinion by ZUFFA regarding any application of the Nevada Rules relating to Bouts that occur in a jurisdiction without an official government mandated Athletic Commission to an independent third-party arbitrator or arbitration panel selected pursuant to the guidelines developed by Judicial Arbitration and Mediation Services, Inc. All costs and fees associated with an appeal taken pursuant to this Section shall be the exclusive responsibility of the Fighter. Regardless of where a Bout occurs, in no event shall a Fighter have any right to appeal a decision by ZUFFA relating to the UFC Title or the UFC Championship belts.

3.8     Additionally, ZUFFA agrees to utilize Fighter in a Bout that broadcast on Fox Network Television during the Term.

3.9     ZUFFA also agrees to utilize Fighter on no less than three (3) occasions, during the Term, as "on-air" talent to provide commentating services for other UFC branded events in which Fighter is not then participating the date, timing and location of which shall be at ZUFFA's discretion.

//

//

5

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

ARTICLE IV
TERM

4.1     The duration of the Promotional Rights provided herein (the "**Term**") shall commence on the Effective Date and end on the earlier of (i) forty (40) months after the first bout promoted by ZUFFA involving Fighter under this Agreement; or (ii) the date on which Fighter has participated in at least eight (8) Bouts promoted by ZUFFA pursuant to this Agreement (the "**Termination Date**"), unless terminated sooner or extended further pursuant to the provisions of this Agreement.

4.2     If, at the expiration of the Term, Fighter is then a UFC champion, the Term shall automatically be extended for the period commencing on the Termination Date and ending on the later of (i) one (1) year from the Termination Date; or (ii) the date on which Fighter has participated in three (3) bouts promoted by ZUFFA, regardless of weight class or title, following the Termination Date ("**Extension Term**").  Any reference to the Term herein shall be deemed to include a reference to the Extension Term, where applicable.

4.3     The length of time for ZUFFA to provide Fighter with the minimum number of Bouts enumerated in this Article IV shall be extended for six (6) months or any period of time that Fighter is unable or unwilling to compete, whichever is greater.  Such extension shall include, without limitation, any time periods when Fighter is disabled, sick or injured for any reason; incarcerated; suspended or revoked by an Athletic Commission; has his ability to travel restricted by a governmental agency or is otherwise unable, unwilling or refuses to compete or train for a Bout for any reason whatsoever, including, without limitation, not approving of an opponent designated by ZUFFA pursuant to Section 3.1 of this Agreement.  Additionally, the length of time for ZUFFA to provide Fighter with the minimum number of Bouts enumerated in this Article IV shall also be extended for any length of time that Fighter serves as a coach on the "*The Ultimate Fighter*"® reality television series or six (6) months whichever is longer.

4.4     The expiration or earlier termination of the Term, any Acceleration (as defined herein), or the death or incapacity of the Fighter, shall not affect or terminate the grant of the Ancillary Rights or any of the other general or specific provisions of this Agreement, all of which shall survive any such expiration, termination, Acceleration, death or incapacity.

4.5     ZUFFA shall not be deemed in default of this Agreement to the extent that performance of its obligations are delayed or prevented by reason of any act of God, fire, natural disaster, war, riots, civil unrest, strike or labor difficulties, terrorism, power failure, other calamity or acts constituting force majeure, or any governmental or Athletic Commission enactment, determination or action, regulation or order. If there is an occurrence of a force majeure event or other bona fide action, ZUFFA may elect to suspend this Agreement for a period equal to the duration of the occurrence, and no compensation shall be paid or become due to Fighter during such suspension period.

ARTICLE V
BOUT AGREEMENT AND STANDARD FIGHTER CONTRACT

5.     For each Bout, Fighter shall execute and comply with the terms of a Bout Agreement ("**Bout Agreement**"), which shall be either the standard fighter contract required by the applicable Athletic Commission or pursuant to the Nevada Rules, as applicable (the "**Standard Fighter Contract**"), and any other contract required to be executed by law, the terms of which shall be consistent with the

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

terms of this Agreement.  To the extent of any conflict between this Agreement and a Bout Agreement with respect to a Bout, the Bout Agreement shall control.

ARTICLE VI
COMPENSATION

6.1      Subject in all events to Section 10.1(d), the Compensation to Fighter shall take the form of a "**Fighter's Purse**" and, if and only if Fighter is declared the winner of a Bout by the Athletic Commission, a "**Win Bonus**," each in the amount as set forth below.

a.      Fighter's Purse for the first Bout shall be Seventy Thousand Dollars (US $70,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout by the Athletic Commission, the Win Bonus for the first Bout shall be Seventy Thousand Dollars (US $70,000.00), less all permissible or required deductions.

b.      If and only if Fighter is declared the winner of the first Bout by the applicable Athletic Commission, Fighter's Purse for the second Bout shall be Seventy-Five Thousand Dollars (US $75,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout and the second Bout by the Athletic Commission, the Win Bonus for the second Bout shall be Seventy-Five Thousand Dollars (US $75,000.00), less all permissible or required deductions.  If Fighter is not declared the winner of the first Bout (and there is no Acceleration), Fighter's Purse and Win Bonus for the second Bout shall be as set forth in subsection (a) above.

c.      If and only if Fighter is declared the winner of the first Bout and the second Bout by the applicable Athletic Commission, Fighter's Purse for the third Bout shall be Eighty Thousand Dollars (US $80,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout, the second Bout, and the third Bout by the applicable Athletic Commission, the Win Bonus for the third Bout shall be Eighty Thousand Dollars (US $80,000.00), less all permissible or required deductions.  If Fighter is not declared the winner of the first Bout and the second Bout by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the third Bout shall be the same as set forth in subsection (a) above.  If Fighter is declared the winner of either the first Bout or the second Bout by the applicable Athletic Commission, but not both (and if there is no Acceleration) Fighter's Purse and Win Bonus for the third Bout shall be as set forth in subsection (b) above.

d.      If and only if Fighter is declared the winner of the first Bout, second Bout and third Bout by the applicable Athletic Commission, Fighter's Purse for the fourth Bout shall be Eighty-Five Thousand Dollars (US $85,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout, and the fourth Bout by the applicable Athletic Commission, the Win Bonus for the fourth Bout shall be Eighty-Five Thousand Dollars (US $85,000.00), less all permissible or required deductions.  If Fighter is not declared the winner of the first Bout, second Bout and third Bout (and if there is no Acceleration), Fighter's Purse and Win Bonus for the fourth Bout shall be as set forth in subsection (a) above.  If Fighter is declared the winner of only one of the first three Bouts by the applicable Athletic Commission (and if there is no Acceleration) Fighter's Purse and Win Bonus for the fourth Bout shall be as set forth in subsection (b) above.  If Fighter is declared the winner of only two of the first three Bouts by the applicable Athletic Commission (and if there is no Acceleration) Fighter's Purse and Win Bonus for the fourth Bout shall be as set forth in subsection (c) above.

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

     e.     If and only if Fighter is declared the winner of the first Bout, second Bout, third Bout and the fourth Bout by the applicable Athletic Commission, Fighter's Purse for the fifth Bout shall be Ninety Thousand Dollars (US $90,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout and the fourth Bout by the applicable Athletic Commission, the Win Bonus for the fifth Bout shall be Ninety Thousand Dollars (US $90,000.00), less all permissible or required deductions.  If Fighter is not declared the winner of the first Bout, the second Bout, the third Bout and the fourth Bout by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the third Bout shall be the same as set forth in subsection (a) above.  If Fighter is declared the winner of one the first four Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the third Bout shall be the same as set forth in subsection (b) above.  If Fighter is declared the winner of two of the first four Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighters Purse and Win Bonus for the fifth Bout shall be the same as set forth in subsection (c) above.  If Fighter is declared the winner of three of the first of the first four Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighters Purse and Win Bonus for the fifth Bout shall be the same as set forth in subsection (d) above.

     f.     If and only if Fighter is declared the winner of the first Bout, second Bout, third Bout, the fourth Bout and the fifth Bout by the applicable Athletic Commission, Fighter's Purse for the sixth Bout shall be Ninety-Five Thousand Dollars (US $95,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout and the sixth Bout by the applicable Athletic Commission, the Win Bonus for the sixth Bout shall be Ninety-Five Thousand Dollars (US $95,000.00), less all permissible or required deductions.  If Fighter is not declared the winner of the first Bout, the second Bout, the third Bout, the fourth Bout, and the fifth Bout by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (a) above.  If Fighter is declared the winner of one of the first five Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (b) above.  If Fighter is declared the winner of two of the first five Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (c) above.  If Fighter is declared the winner of three of the first five Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (d) above.  If Fighter is declared the winner of four of the first five Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (e) above.

     g.     If and only if Fighter is declared the winner of the first Bout, second Bout, third Bout, the fourth Bout the fifth Bout, and the sixth Bout, Fighter's Purse for the seventh Bout shall be One Hundred Thousand Dollars (US $100,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout, the sixth Bout, and the seventh Bout by the Athletic Commission, the Win Bonus for the seventh Bout shall be One Hundred Thousand Dollars (US $100,000.00), less all permissible or required deductions.  If Fighter is declared the loser of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout and the sixth Bout (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (a) above.  If Fighter is declared the winner of one of the first six Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (b) above.  If Fighter is declared the winner of

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

two of the first six Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (c) above. If Fighter is declared the winner of three of the first six Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (d) above. If Fighter is declared the winner of four of the first six Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (e) above. If Fighter is declared the winner of five of the first six Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (f) above.

   h. If and only if Fighter is declared the winner of the first Bout, second Bout, third Bout, the fourth Bout the fifth Bout, the sixth Bout, and the seventh Bout, Fighter's Purse for the eighth Bout shall be One Hundred Five Thousand Dollars (US $105,000.00), less all permissible or required deductions. If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout, the sixth Bout, the seventh Bout, and the eighth Bout by the Athletic Commission, the Win Bonus for the eighth Bout shall be One Hundred Five Thousand Dollars (US $105,000.00), less all permissible or required deductions. If Fighter is declared the loser of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout, the sixth Bout, and the seventh Bout (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (a) above. If Fighter is declared the winner of one of the first seven Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (b) above. If Fighter is declared the winner of two of the first seven Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (c) above. If Fighter is declared the winner of three of the first seven Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (d) above. If Fighter is declared the winner of four of the first seven Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (e) above. If Fighter is declared the winner of five of the first seven Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (f) above. If Fighter is declared the winner of six of the first seven Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (g) above.

   6.2 ZUFFA and Fighter intend for Fighter's first Bout, under this Agreement, to be for the UFC lightweight title and for said lightweight title Bout to occur before the end of March of 2013 so long as Fighter and the then current UFC lightweight champion is medically and/or otherwise able to compete by such date. For the avoidance of doubt, however, regardless of whether Fighter's first Bout is for the lightweight title Bout and occurs on or before the end of March of 2013, in addition to the Fighter's Purse, (i) for Fighter's first Bout under this Agreement; and (ii) for any subsequent Bout thereafter in which Fighter participates in a Bout and is defending a UFC Championship belt, so long as such applicable UFC event is broadly distributed in the United States and/or Canada, or any other territory, including via the internet, and so long as the rates charged in said territories, or on the internet, are comparable to those charged in the United States or Canada, on residential pay-per-view on iN DEMAND, DirecTV, Echostar, or similar pay-per-view provider as utilized by ZUFFA ("Pay-Per-View Providers"), then Fighter has the potential to receive a pay-per-view bonus. If such UFC event exceeds specified buy rates of combined sales through Pay-Per-View Providers, Fighter shall receive a Pay-Per-View Bonus as follows:

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

For combined Pay-Per-View Provider buys purchased within thirty (30) days of the live event, Fighter shall receive One dollar ($1.00) for each pay-per-view buy between 200,000 buys and 400,000 buys; and Two dollars ($2.00) for each pay-per-view buy between 400,000 buys and 600,000 buys; and Two dollars and Fifty Cents ($2.50) for each pay-per-view buy over 600,000 buys.

*By way of example only, if such an applicable event were to generate 900,000 combined iN DEMAND, DirecTV, and Echostar, pay-per-view buys, Fighter would receive a pay-per-view Bonus of $1,350,000, which would represent $200,000 for applicable buys between 200,000 and 400,000 ($1 x 200,000 buys), $400,000 for applicable buys between 400,000 and 600,000 ($2.00 x 200,000 buys) and $750,000 for applicable buys between 600,000 and 900,000 ($2.50 x 300,000).

6.3     In order to verify ZUFFA's compliance with the potential pay-per-view bonus, Fighter is entitled, upon written notice of at least thirty (30) business days, to review, at ZUFFA's offices, all applicable pay-per-view reports that ZUFFA has received from iN DEMAND, DirecTV, Echostar and Canadian pay-per-view providers. Fighter may exercise this right no more than once each calendar year, for each Bout in which he participates, for up to two (2) years after the date of the applicable Bout. Pay-per-view bonus to be paid on an ongoing monthly basis subsequent to ZUFFA's receipt of payment from the pay-per-view providers and only if the aggregate amount owed to Fighter is in excess of $500.00. Fighter agrees to treat any such of review under this section as confidential and agree not to disclose any information reviewed hereunder except as required by law or pursuant to a valid Court order. Additionally, Fighter agrees to refund and reimburse ZUFFA for any overpayments in the event and to the extent iN DEMAND, DirecTV, Echostar and/or Canadian providers adjust the pay-per-view buys for any of Fighter's bouts retroactively. ZUFFA shall have the right to deduct any overpayment adjustments from future payments to Fighter. ZUFFA reserves the right to reduce payments related to Canadian or other non-US pay-per-view buys in the event of an adverse currency exchange rate at the time of the payment to Fighter.

6.4     ZUFFA shall pay Fighter's Purse and the Win Bonus, if applicable, within twenty-four (24) hours of the completion of each Bout, except that if Fighter tests positive for any Controlled Substance (defined below) in a post-fight drug test, payment will be subject to the authority of and ZUFFA shall make payments only in accordance with the recommendations of the Athletic Commission. ZUFFA may deduct or withhold from compensation any applicable tax (whether domestic or foreign), fee, or sum required or permitted to be deducted or withheld by law, and may offset against any such compensation any sums advanced to Fighter by ZUFFA or otherwise due from Fighter to ZUFFA.

6.5     The Fighter's Purse and Win Bonus, and, if applicable pay-per-view bonus, together with the Incidentals (defined below) shall be the sole compensation due to or claimed by Fighter on account of this Agreement, the Rights, and Fighter's participation in any Bout or any activity related thereto.

6.6     Any and all potential Fighter's Purses and, if applicable, Win Bonuses and/or pay-per-view bonuses capable of being earned during the Extension Term shall be negotiated in good faith between the parties. However, the parties expressly agree that such potential amounts are quantifiable and definite terms to this Agreement because each such Fighter's Purse and, if applicable, Win Bonus shall, at a minimum, be no less than the last Fighter's Purse and, if applicable, Win Bonus received by Fighter during the standard Term of this Agreement.

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

6.7     Any advances shall be made in the sole discretion of ZUFFA, and may be subject to the prior approval of the Athletic Commission.

6.8     Fighter shall operate within the requirements of all tax laws and regulations, and interpretations thereof, and be solely responsible for reporting the entire compensation paid under this Agreement and any corresponding agreements and ensure timely settlement of all taxes and other similar deductions.  ZUFFA shall provide Fighter with a Form 1099 within ninety (90) days following the close of its fiscal year.

ARTICLE VII

INCIDENTALS

7.1     In addition to the Fighter's Purse and, if applicable, the Win Bonus, as provided for above, Fighter shall be entitled to the transportation, lodging, meals or meal allowances, and Bout tickets (collectively, the "**Incidentals**") identified in the Bout Agreement. Such Incidentals shall not be less than the Incidentals set forth herein.

a.     For each non-championship Bout hereunder which Fighter participates in, ZUFFA shall provide a total of one (1) hotel or motel room and two (2) round-trip economy class airline tickets from the airport servicing Fighter's hometown to the site of the Bout for use by and transportation of Fighter and one (1) of Fighter's Affiliates (the "**Fighter's Affiliates**").  Fighter's Affiliates shall include, but not be limited to, his manager, agent, trainer, seconds, sparring partners and other persons associated with Fighter who are connected with the Bouts.

b.     For each championship Bout hereunder which Fighter participates in as the champion or the challenger for the championship, ZUFFA shall provide a total of two (2) hotel or motel rooms and three (3) round-trip economy class airline tickets from the airport servicing Fighter's hometown to the site of the Bout for use by and transportation of Fighter and two (2) of Fighter's Affiliates.

c.     For all Bouts hereunder, Fighter shall arrive and check in to the lodging provided by ZUFFA on the date specified in the Bout Agreement, which shall be any time up to eight (8) days prior to the date of the Bout (the "**Training Commencement Date**"), and shall check-out and depart from the lodging provided prior to the designated check-out time on the day after the Bout (the "**Departure Date**").

d.     From the Training Commencement Date through the Departure Date, Fighter and one (1) of Fighter's Affiliates shall each be provided with either Fifty Dollars (US $50.00) cash *per diem* for meals, or at ZUFFA's discretion, meal vouchers for three (3) meals per day.  Food and beverage allowances shall be non-cumulative from day to day.

e.     Lodging shall be provided only from the Training Commencement Date through the Departure Date. Fighter and Fighter's Affiliates shall be required to present a valid credit card upon registering at the hotel or motel, which card shall be charged for any and all expenses and damages beyond the cost of the room, and ZUFFA shall have no obligation for such additional expenses.

11

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

f.    Fighter shall also be provided with four (4) tickets to each Bout hereunder, the selection and location of which shall be determined by ZUFFA. If Fighter's Bout is the main event, Fighter shall receive tickets for seats located within ten (10) rows of the Octagon.

7.2    No other benefits, charges, expenses, or other incidentals of any kind (*e.g.*, telephone charges, beverages, entertainment, gift shop items or other such benefits, charges and expenses) shall be provided by ZUFFA to Fighter or anyone associated with Fighter, and Fighter shall not be entitled to receive compensation in lieu of any unused or undesired Incidental.

## ARTICLE VIII
## FIGHTER'S CONDUCT

8.1    Fighter shall conduct himself in accordance with commonly accepted standards of decency, social conventions and morals, and Fighter will not commit any act or become involved in any situation or occurrence or make any statement which will reflect negatively upon or bring disrepute, contempt, scandal, ridicule, or disdain to Fighter, the Identity of Fighter or any of Fighter's Affiliates, ZUFFA or any of its officers, managers, members, employees, or agents. Fighter's conduct shall not be such as to shock, insult or offend the public or any organized group therein, or reflect unfavorably upon any current or proposed, arena, site hotel, sponsor or such sponsor's advertising agency, or any network or station over which a Bout is to be broadcast. In addition, Fighter agrees that during a Bout, or while training for a Bout, as well as during any Pre-Bout Events or Post-Bout Events, neither Fighter nor any of his managers, trainers and assistants shall wear any clothing or ornamentation, including, but not limited to, permanent or temporary tattoos or body art, that is lewd, obscene, offensive, defamatory, discriminatory on the basis of age, sex, race, color, creed, national origin, political belief, religious belief or sexual orientation or otherwise inappropriate as determined by ZUFFA in its sole discretion or which conflicts with a ZUFFA sponsor, the arena or telecaster.

8.2    Fighter and Fighter's Affiliates shall maintain a high standard of sportsmanship and conduct themselves in a professional manner prior to, during, and following each Bout.

8.3    Fighter shall not authorize or be involved with any advertising material or publicity materials that contain language or material which is generally considered to be obscene, libelous, slanderous or defamatory and will not violate or infringe upon, or give rise to any adverse claim with respect to, any common-law or other right whatsoever (including, but not limited to, any copyright, trademark, service mark, literary, dramatic, music or motion picture right, right of privacy or publicity, contract or moral rights of authors) of any person or entity.

8.4    Fighter shall maintain his eligibility and keep in good standing any license required to participate in any Bout.

8.5    Fighter shall not use any controlled or banned substance, including but not limited to marijuana, cocaine, methamphetamine, steroids, human growth hormone or any similar drugs or blood doping techniques (each a "**Controlled Substance**"). Fighter agrees that an Athletic Commission may test Fighter for Controlled Substances, and Fighter agrees to submit to any pre-Bout or post-Bout drug test as requested by an Athletic Commission. Fighter shall be deemed to be in breach of this Section if Fighter tests positive for any Controlled Substance in any pre-Bout or post-Bout drug test.

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

8.6     Fighter acknowledges that an Athletic Commission may fine, suspend or impose other penalties, including but not limited to removing recognition from Fighter of any Championship title, status or belt if Fighter tests positive for a Controlled Substance.

## ARTICLE IX INJURY OR
## RETIREMENT

9.1     If at any time during the Term, ZUFFA offers to promote a Bout for Fighter and Fighter refuses to participate in or attempts to cancel or postpone such Bout for reason of a claimed injury or other medical disability, ZUFFA shall have the right, but not the obligation, to have Fighter examined by a medical doctor of its choice at ZUFFA's expense, and, if ZUFFA so elects, Fighter shall appear for such examination on one (1) day's notice.

9.2     If at any time during the Term, Fighter claims to be injured or temporarily disabled, ZUFFA may, at its election, for each such injury or disability claimed by Fighter, (i) extend the Term for the period of such injury or disability or for the period of six (6) months, whichever is longer; (ii) declare that ZUFFA has satisfied its obligation to promote one (1) of the Bouts to be promoted by ZUFFA hereunder, without any compensation due to Fighter for said Bout; or (iii) provide Fighter with notice of an Acceleration as defined herein.

9.3     If at any time during the Term, Fighter decides to retire from mixed martial arts or other professional fighting competition or is permanently disabled, then ZUFFA may, at its election, (i) suspend the Term for the period of such retirement or disability; (ii) declare that ZUFFA has satisfied its obligation to promote all future Bouts to be promoted by ZUFFA hereunder, without any compensation due to Fighter therefor; or (iii) elect to provide Fighter with notice of an Acceleration.

## ARTICLE X
## TERMINATION/REMEDIES

10.1     ZUFFA shall have the right, but not the obligation, upon notice to Fighter, to accelerate the Term and thereby terminate ZUFFA'S promotional and other obligations hereunder and under any Bout Agreement then in effect (an "**Acceleration**") and to terminate Fighter's participation in any Bout, with Acceleration effective as of the date of notice, and to withdraw recognition from Fighter of any Championship Title, Status and Belt, if:

a.     Fighter fails, for any reason whatsoever (other than the injury or physical disability of Fighter or any act of God as provided in Section 4.5) to engage in the minimum number of Bouts as offered by ZUFFA;

b.     Fighter or any of Fighter's Affiliates materially breach, violate or are in default of any provision of this Agreement or any other agreement hereafter entered into between Fighter and ZUFFA;

c.     any of the representations or warranties of Fighter contained herein were false when made or are no longer true and correct;

13

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

       d.      Fighter is not declared the winner of any mixed martial arts bout (whether promoted by ZUFFA or not) by the Athletic Commission or official authority having jurisdiction over the bout; or

       e.      Fighter's license to participate in bouts is suspended or revoked by an Athletic Commission.

       f.      Fighter is unable to obtain the necessary documentation, including any work visas, to lawfully permit Fighter or Fighter's Affiliates to participate in any Bout as provided for in Section 23.2 of this Agreement.

       g.      Fighter is charged with a misdemeanor (other than a minor traffic offense) or a felony.

       h.      Fighter should commit any act which would permit any arena, event site or television broadcaster, distributor or exhibitor to cancel its contract with ZUFFA for a particular Bout in which Fighter was to participate.

10.2    Acceleration shall be without further liability or obligation from ZUFFA to Fighter, except for the payment of any Fighter's Purse or Win Bonus, if applicable, or other amounts due for Bouts that have been completed prior to Acceleration.

10.3    Acceleration shall not serve to affect or terminate any of the Ancillary Rights, and this Agreement shall survive an Acceleration and remain in full force and effect with respect to the Ancillary Rights. ZUFFA's failure to accelerate in any particular case shall not constitute a waiver for future such cases.

10.4    Fighter acknowledges that his services as a professional fighter and the Ancillary Rights granted to ZUFFA herein are special, unique, extraordinary, irreplaceable and of peculiar value, and that in the event of Fighter's breach or threatened breach of this Agreement or any Bout Agreement, ZUFFA would suffer irreparable damage which could not be reasonably or adequately compensated by an award of damages. In the event of such breach or threatened breach, ZUFFA shall be entitled, in addition to any other available remedy, to obtain equitable relief, including, but not limited to, an injunction against such breach and Fighter waives the right to assert as a defense in any such action that ZUFFA has an adequate remedy at law. To the extent that a bond is necessary to obtain an injunction, Fighter agrees that the bond shall not exceed Five Hundred Dollars (US $500.00).

10.5    If Fighter believes in good faith that ZUFFA has materially breached any material provision of this Agreement, or has unreasonably failed or refused to perform its obligations hereunder, Fighter shall provide ZUFFA with written notice of such alleged breach and shall provide ZUFFA with at least ten (10) business days to cure such alleged breach. If ZUFFA fails to cure the alleged material breach within ten (10) business days of receipt of Fighter's written notice, then and only then may Fighter seek to terminate this Agreement and seek redress for any outstanding compensation owed to Fighter hereunder. Fighter expressly understands and agrees that his sole remedy for any alleged breach by ZUFFA shall be to seek payment for any remaining compensation due to Fighter under Article VI, exclusive of any potentially applicable Win Bonuses, and in no event shall Fighter be entitled to any consequential, incidental, or punitive damages of any sort.

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

## ARTICLE XI
## INSURANCE

11.1     ZUFFA will provide health and accidental death insurance as required by the applicable Athletic Commission. Fighter hereby acknowledges that professional unarmed combat has the significant potential for serious injuries, and Fighter is knowingly and voluntarily assuming all such risks. Accordingly, except for the insurance benefits being provided by ZUFFA as described in this Article 11, Fighter, for himself, his heirs, assigns, executors, and administrators agrees to be solely liable for and will bear the full and complete cost of any and all medical treatment or disability and all other costs associated with any injuries resulting from any and all Fighter's services under this agreement. Furthermore, Fighter assumes all risks of injuries sustained outside of a Bout.

11.2     ZUFFA shall have the right, at its election, to obtain, at ZUFFA's cost and expense, life or other insurance upon Fighter, including, but not limited to, insurance against the failure of Fighter to appear and to participate in any Bout and insurance to cover injuries sustained by Fighter in training and preparation for a Bout, in such amounts or type of coverage as ZUFFA may determine, and, if applicable, for the benefit of ZUFFA. Except as expressly consented to in writing by ZUFFA, neither Fighter nor any of Fighter's Affiliates shall have any right, title or interest in such insurance. Fighter and Fighter's Affiliates shall, at the request of ZUFFA, cooperate with and assist ZUFFA - or its agent (as directed by ZUFFA), - in obtaining and maintaining any such coverage, including submitting to physical or other examinations of Fighter and furnishing such information and medical records as may be required by any existing or proposed insurer and performing all further acts and things, and executing any and all additional documents or instruments necessary for ZUFFA to obtain any such insurance contemplated by this Section 11.2.

## ARTICLE XII
## RIGHT TO MATCH

12.1     During the one (1) year period after conclusion of the Term for any reason whatsoever (the "**Matching Period**"), ZUFFA shall have the option to match the financial terms and conditions of any offer made to Fighter for an Other Bout as defined in Section 3.6 of this Agreement. Fighter shall not accept any offer or enter into a contract or agreement with any other promotional entity during the Matching Period without complying with this Section 12.1. Prior to acceptance of any Offer made during the Matching Period, Fighter shall first deliver to ZUFFA a written notice of all material financial terms and conditions of the offer, including, but not limited to, the identity of the promotional entity making the offer. Such notice shall constitute an exclusive, irrevocable offer (the "**Fighter Offer**") to contract with ZUFFA on the same financial terms and conditions.   ZUFFA shall have fifteen (15) business days following receipt of the Fighter Offer in which to accept the financial terms of the Fighter Offer. If ZUFFA does not accept the Fighter Offer, Fighter may then accept the offer without modification during the ten (10) business day period following expiration of the Fighter Offer (the "**Contract Period**"). If the offer is modified in any material way, such modification shall give rise to another Fighter Offer on such modified terms and conditions and ZUFFA shall have the option to match the terms of the offer, as modified in accordance with the terms and conditions of this Section 12.1. If Fighter has not contracted with a third party on or before the conclusion of the Contract Period, then all rights granted to ZUFFA pursuant to this Section 12.1 shall be automatically reinstated.

12.2     The provisions of Section 12.1 above shall survive termination or expiration of this Agreement.

15

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

ARTICLE XIII
REPRESENTATIONS AND WARRANTIES

13.1.    Fighter represents and warrants to ZUFFA that:

a.    Fighter shall prepare and honestly compete to the best of Fighter's ability in the Bout and that there is no impairment to Fighter doing so;

b.    Fighter is free to enter into this Agreement and has not heretofore and will not hereafter enter into any contract, option, agreement or understanding, whether oral or written, which conflicts with the provisions hereof or the grant of Rights contained herein or which would or could interfere with Fighter's full and complete performance hereunder or the free and unimpaired exercise by ZUFFA of any of the Rights;

c.    There are no claims or arbitration, mediation, or litigation pending or threatened affecting Fighter that would or could interfere with Fighter's full and complete performance hereunder or the free and unimpaired exercise by ZUFFA of any of the Rights;

d.    Fighter is entering into this Agreement of his own free will, is not subject to duress of any kind, and is not under the influence of any Controlled Substance and Fighter knows of no disability, whether physical or mental, which would or could prevent Fighter from the full and complete performance of his obligations hereunder; and

e.    Fighter has had the opportunity to consult an attorney or other representative regarding this Agreement, and he appreciates the legal significance and consequences of signing this Agreement; and

f.    Fighter is either (i) a citizen of the United States and is not otherwise subject to any "backup" or other withholding of taxes or compensation specially applicable to those who are not citizens of the United States, or (ii) is not a citizen of the United States but has provided to ZUFFA in writing all information necessary to enable ZUFFA to comply with any such applicable withholding or other payment requirement.

g.    Fighter has obtained, and ZUFFA shall not be responsible to pay for in any way whatsoever, all clearances, licenses, uses, reuse fees, license fees, relating to the use and appearance of any creative expression, clothing apparel, sportswear and equipment, included but not limited to, trunks, robes, shoes, or any other part of the costume, electronic information, digital information, wording, phrases, symbols, pictures, designs, print materials or other materials or information (including, without limitation, the trademarks, copyrights, personal privacy, property rights, names, voices, and likenesses of all and any persons, properties and businesses appearing therein (if any), and all components and elements thereof) displayed and exhibited by Fighter or any of Fighter's Affiliates during or at any Bouts, Pre-Bout Events or Post-Bout Events.

h.    Fighter has the full power to expressly and irrevocably transfer said rights described in Paragraph 13.1(g) above to ZUFFA, or ZUFFA's respective sponsors, successors, assigns, agents, directors, members, managers, officers, employees, co-producers and licensees, and warrants that

16

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

the exercise of the rights granted herein will not infringe on any rights of any third party, including but not limited to copyright, trademark, unfair competition, contract, defamation, privacy or publicity rights.

13.2.    ZUFFA represents and warrants to Fighter that:

a.    ZUFFA is a limited liability company duly formed under the laws of the State of Nevada; and that the person executing this Agreement on behalf of ZUFFA is authorized to do so; and

b.    ZUFFA is able to perform its promotional and payment obligations arising hereunder, and there are no claims or arbitration, mediation, or litigation pending or threatened affecting ZUFFA that would prevent ZUFFA from performing hereunder.

ARTICLE XIV
ASSUMPTION OF THE RISK/WAIVER OF ALL CLAIMS

14.1    Fighter fully understands and agrees that the professional sport of mixed martial arts is an inherently and abnormally dangerous activity that can result in severe and permanent physical injury, including but not limited to irreversible neurological trauma, disability, or death. Fighter represents that he is a seasoned professional in the sport of mixed martial arts, and Fighter has knowingly evaluated the inherent risks, foreseen and unforeseen, in this dangerous sport and represents and declares that he is physically, mentally, emotionally and intellectually willing and able to accept, and does hereby clearly, unambiguously and explicitly accept, all risks, foreseen and unforeseen, associated with participating in the sport and the Bouts.

14.2    In consideration for the opportunity to participate in the Bouts, and with full knowledge and complete assumption of all the risks, Fighter, for himself, his heirs, assigns, executors and administrators ("**Releasing Parties**") hereby irrevocably agrees that the Releasing Parties will not sue or claim against ZUFFA or any of its parents, subsidiary entities, affiliates, sponsors, successors and assigns, and the respective directors, officers, members, managers, employees, agents, contractors, partners, shareholders and representatives, in their individual, personal and representative capacities for each of the foregoing entities ("**Released Parties**") for any injury, illness, damage, loss or harm to Fighter or Fighter's property, or Fighter's death or disability, howsoever caused, resulting or arising out of or in connection with Fighter's preparation for, travel for, participation and appearance in, any UFC promotional events, the Bouts, the Pre-Bout Events and the Post-bout Events or any activities associated therewith.

14.3    In consideration for the opportunity to participate in the Bouts, and with full knowledge and complete assumption of all risks, the Releasing Parties hereby forever voluntarily release, discharge, waive and relinquish any and all, past, present and future, claims and causes of action, specifically including any claims based on negligence or gross negligence, that they may have against the Released Parties, as the result of any injury, illness, damage, loss or harm to Fighter or Fighter's property, or Fighter's death or disability, howsoever caused, resulting or arising out of or in connection with Fighter's preparation for, travel for, participation and appearance in any UFC promotional events, the Bouts, the Pre-Bout Events and the Post-Bout Events or any activities associated therewith. Furthermore, the Releasing Parties hereby irrevocably and unconditionally consent and agree that any insurance proceeds and benefits provided by ZUFFA hereunder shall be the only benefits the Releasing Parties may claim or

17

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

receive from Released Parties for any injury, including death, relating to any and all of Fighter's services under this Agreement.

## ARTICLE XV
### INDEMNIFICATION

15.     Fighter shall indemnify, defend and hold harmless ZUFFA, its subsidiaries, affiliates and sponsors, and each of their members, managers, directors, officers, employees, representatives, agents and contractors from and against any claims, actions, proceedings, expenses (including attorneys' fees of counsel of indemnified party's choice, as and when incurred) and damages arising from or relating to any negligent or intentional acts or omissions by Fighter or any of Fighter's Affiliates or the breach of any of Fighter's representations, warranties or covenants contained herein or within any Bout Agreement.

## ARTICLE XVI PROHIBITION ON USE
## OF INTELLECTUAL PROPERTY
### RIGHTS

16.1     Unless Fighter receives prior written approval from ZUFFA, Fighter shall not utilize any of ZUFFA's intellectual property rights, including, but not limited to, the names and marks "Ultimate Fighting Championship," "UFC," the "Octagon," "Ultimate Fighting," "Ultimate Fighter," and any logos, pictures or other representations of ZUFFA's intellectual property.   Without limiting the scope of this prohibition, Fighter expressly agrees that he may not refer to himself as a "UFC Champion"; "former UFC Champion"; "UFC Star"; "UFC Superstar"; "UFC Fighter" or utilize any of ZUFFA's intellectual property in describing or referring to himself without the express written consent of ZUFFA.   Further, Fighter expressly agrees not to use a UFC championship belt without the prior written approval of ZUFFA, and further agrees that any such belt he obtains is on loan and will at all times remain the property of ZUFFA. Upon ZUFFA's written request, the belt must be returned within forty-eight (48) hours to ZUFFA at Fighter's expense.   Additionally, Fighter expressly acknowledges and agrees that ZUFFA is not a sanctioning organization and Fighter does not possess and cannot assert any property right or similar legal interest in the UFC Title or in being a UFC Champion.

16.2     Fighter shall not utilize the intellectual property rights of any of ZUFFA's sponsors, including, without limitation, any logos, pictures or other representations of such intellectual property.

## ARTICLE XVII
### ASSIGNMENT

17.1     ZUFFA shall have the absolute right to assign, license, or transfer any or all of the rights granted to it hereunder, including, but not limited to, the right to co-promote any Bout in association with any one or more persons or entities of its choosing.   ZUFFA may assign any of its respective obligations hereunder without Fighter's consent.

17.2     The rights and obligations of Fighter arising from this Agreement and any Bout Agreement are personal to Fighter and the benefits and the duties of Fighter hereunder may not be assigned, pledged or transferred for any reason.

## ARTICLE XVIII
### OTHER ACTIVITIES OF ZUFFA

18

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

18.1    Nothing herein shall prevent ZUFFA from engaging in promotional activities for any other professional fighter, including others in the same weight class as Fighter, or any other activities, whether related or unrelated to the subject matter of this Agreement.

18.2    Nothing herein shall prevent Fighter from engaging in any other business, trade, profession or other activity; provided that such other business, trade, profession or other activity does not involve the Fighter engaging in mixed martial arts contests or any other activity prohibited under this Agreement, and does not interfere with the Fighter's training or performance.

## ARTICLE XIX
## INTENT IN SIGNING

19.    Fighter acknowledges that his execution of this Agreement is for the purpose of obtaining the promotional services of ZUFFA upon the terms and conditions of this Agreement and that Fighter has not been required to sign this Agreement or to grant any of the Rights as a condition precedent to Fighter's participation in any professional mixed martial arts contest against another fighter who has granted promotional or ancillary rights to ZUFFA.

## ARTICLE XX INDEPENDENT
## CONTRACTOR STATUS

20.1    Nothing contained in this Agreement shall be construed to make Fighter an employee of ZUFFA or to appoint ZUFFA as Fighter's agent, and ZUFFA shall have no financial interest (other than offset rights) in compensation payable to Fighter for engaging in any Bout hereunder.  It is intended that Fighter shall remain an independent contractor, responsible for his own actions, expenses and any local, state, federal or international taxes, including, but not limited to, the engagement, discharge, benefits and costs of all of Fighter's Affiliates, and training facilities, equipment, professional memberships, sanctioning fees, medical expenses, social security taxes, Federal Insurance Contributions Act (FICA) taxes, and Federal Unemployment Tax Act (FUTA) taxes.

20.2    Fighter shall not be eligible under this Agreement to participate in any vacation, group medical or life insurance, disability, profit sharing or retirement benefits or any other fringe benefits or benefit plans offered by ZUFFA to its employees and ZUFFA shall not be responsible for withholding or paying any income, payroll, Social Security or other federal, state or local taxes, making any insurance contributions (except as provided herein) including unemployment or disability, or obtaining workers' compensation insurance on Fighter's behalf.  Fighter shall be responsible for, and shall indemnify ZUFFA against, all such taxes or contributions, including penalties and interest.  Any persons employed by Fighter in connection with the performance of the services provided by Fighter hereunder shall be employees of Fighter and Fighter shall be fully responsible for such persons.

## ARTICLE XXI COMMERCIAL
## IDENTIFICATION

21.1    Fighter covenants and agrees that no wording, symbols, pictures, designs, names or other advertising or informational material (i) for any beer, alcohol, beverage company, tobacco, casino or gaming company, media company (including, but not limited to, HBO, ABC, SNI, ESPN, Spike, any Viacom owned network and any Internet related company); (ii) of any sponsor in conflict or competition

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

with ZUFFA or any of ZUFFA's sponsors; (iii) of any sponsor causing injury to the reputation of ZUFFA or ZUFFA's sponsors or their respective officers and owners; or (iv) which has not been pre-approved in writing by ZUFFA shall appear on the trunks, gloves, robe, shoes or any other part of the costume or the body (including by use of temporary or henna tattoos) of Fighter or any of Fighter's Affiliates during or at any Bouts, Pre-Bout Events or Post-Bout Events.   For the avoidance of doubt, all sponsorship and endorsement approvals shall be at ZUFFA's sole discretion.  Fighter further covenants and agrees to only use the gloves approved and supplied by ZUFFA.

21.2    Notwithstanding the foregoing, ZUFFA shall have the right to include any advertising or other informational material of ZUFFA, ZUFFA's sponsors or other entities designated by ZUFFA on the trunks, gloves, robe, shoes, regalia or any other part of the costume of Fighter or any of Fighter's Affiliates during or at any Bouts, Pre-Bout Events or Post-Bout Events.

21.3    For television purposes, Fighter must be clearly distinguishable. Therefore, Fighter shall provide one (1) pair of dark-colored trunks and one (1) pair of light-colored trunks for each Bout. If it is necessary to distinguish Fighter from his opponent, ZUFFA shall have sole discretion to require Fighter to wear either the dark-colored or light-colored trunks.

ARTICLE XXII
CONFIDENTIALITY

22.1    Fighter shall not disclose to any third party (other than his agents and professional advisors, in their capacity as such, on a need-to-know basis), any information with respect to the terms and provisions of this Agreement or any Bout Agreement except: (i) to the extent necessary to comply with law or the valid order of a court of competent jurisdiction, in which event Fighter shall notify ZUFFA as promptly as practicable (if possible, prior to making such disclosure) and shall seek confidential treatment of such information, (ii) as part of normal reporting or review procedure to Fighter's lenders, auditors, attorneys and similar professionals, provided that such lenders, auditors and attorneys and similar professionals agree to be bound by the provisions of this section; and (iii) in order to enforce Fighter's rights pursuant to this Agreement or any Bout Agreement, in which case Fighter agrees to enter into a confidentiality agreement for all such proceedings.

22.2    ZUFFA shall have the sole right to determine the timing and content of and to make any press announcements and other public statements regarding this Agreement.

22.3    ZUFFA shall have the sole right to file this Agreement with any applicable athletic or fighting commission and world sanctioning bodies.

ARTICLE XXIII
FURTHER ASSURANCES

23.1    Fighter shall execute any and all additional documents or instruments necessary or desirable to effectuate the provisions of this Agreement, including, but not limited to, Bout Agreements and Standard Fighter Contracts or any other document required by ZUFFA, the Athletic Commission, any local governmental authority with jurisdiction over any Bout and the world organization(s) sanctioning any Bout, if applicable.  No party hereto shall take any action or fail to take any action which action or failure shall frustrate the purposes of this Agreement and the benefits contemplated hereby.

20

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

23.2     Fighter shall be solely responsible for obtaining all necessary documentation, including any work visas, to lawfully permit Fighter and Fighter's Affiliates to participate in all Bouts.  Fighter shall provide copies of all such documentation to ZUFFA no less than thirty (30) days prior to any Bout. Fighter's failure to obtain or provide such documentation shall constitute grounds for ZUFFA, at its election, to (i) obtain the required documentation and deduct the costs thereof from Fighter's Purse, (ii) cancel Fighter's participation in the Bout, without any compensation due to Fighter for said Bout, and extend the Term for a period four (4) months; (iii) declare that ZUFFA has satisfied its obligation to promote one (1) of the Bouts to be promoted by ZUFFA hereunder, without any compensation due to Fighter for said Bout; or (iv) provide Fighter with notice of an Acceleration.

ARTICLE XXIV
NOTICES

24.1     Any notice or other communications given or sent pursuant to this Agreement shall be in writing and shall be deemed given when (i) personally delivered; (ii) delivered by confirmed facsimile transmission; (iii) three (3) days following the date such notice is mailed postage paid by registered or certified mail, return receipt requested; or (iv) to Fighter, delivered by confirmed electronic means (electronic mail), to the respective addresses indicated below or any address subsequently provided to ZUFFA:

| To ZUFFA: | To Fighter: |
|---|---|
| Dana White, President | Eddie Alvarez |
| ZUFFA, LLC | |
| 2960 W. Sahara Ave. | |
| Las Vegas, Nevada 89102 | Email: |
| Fax: (702) 221-4703 | |

| With a copy to: | With a copy to: |
|---|---|
| Kirk D. Hendrick, Chief Legal Officer | |
| ZUFFA, LLC | |
| 2960 W. Sahara Ave. | |
| Las Vegas, Nevada 89102 | Email: |
| Fax: (702) 914-0200 | |

24.2     Any party may change its address for notice purposes by providing notice of such change of address in accordance with this section.

ARTICLE XXV
CHOICE OF LAW/EXCLUSIVE JURISDICTION AND VENUE

25.1     This Agreement has been delivered at and shall be deemed to have been made at Las Vegas, Nevada, and shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the laws of the State of Nevada.

25.2     ZUFFA and Fighter hereby (a) expressly consent to the exclusive personal jurisdiction and venue of the state and federal courts located in Clark County, Nevada for any action brought by either party to interpret or enforce any provision of this Agreement and (b) agree not to assert (by way of

21

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

motion, as a defense or otherwise) that such legal proceeding has been brought in an inconvenient forum. The undersigned, by execution and delivery of this Agreement, expressly and irrevocably consent to the service of any complaint, summons, notice or other process relating to any such action or proceeding by delivery thereof to such party by hand or by certified mail, delivered or addressed to the address set forth in this Agreement.

ARTICLE XXVI
MISCELLANEOUS PROVISIONS

26.1    If any provision of this Agreement is found to be illegal, invalid, or unenforceable as to any circumstance, such finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. Rather, the offending provision shall be considered modified so that it becomes legal, valid and enforceable, or, if not capable of such modification, shall be considered deleted. The illegality, invalidity, or unenforceability of any provision shall not affect the legality, validity, or enforceability of any other provision of this Agreement.

26.2    No waiver by any party of any breach or default hereunder shall be deemed to be a waiver of any preceding or subsequent breach or default. All waivers must be in writing, specify the breach or default concerned and be signed by the party against whom the waiver is sought to be enforced.

26.3    In the event either party engages counsel in connection with the enforcement or interpretation of this Agreement or any provision hereof or the resolution of any dispute arising from or related to this Agreement, the prevailing party shall be entitled to recover from the other party its attorneys' fees and costs, regardless of whether or not an action is filed.

26.4    The provisions of this Agreement are for the exclusive benefit of the parties hereto and their permitted successors and assigns, and no third party shall be a beneficiary of or have any rights under this Agreement, regardless of whether or not such third party is referred to herein.

26.5    Other than any Bout Agreement or Standard Fighter Contract which may be entered into by the parties pursuant to the terms of this Agreement, this Agreement sets forth and integrates the entire understanding between Fighter and ZUFFA, and supersedes any and all prior or contemporaneous written or oral agreements or representations between the parties with respect to the subject matter hereof.

26.6    This Agreement may not be altered, amended or discharged, except by a subsequent writing signed by the parties hereto.

26.7    This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument. Facsimile signatures shall be as effective as originals.

26.8    Descriptive headings of this Agreement are inserted for convenience only and do not constitute a part of this Agreement and shall not be considered for purposes of its interpretation. The parties agree that they have equally participated in the negotiation of the terms and conditions in this Agreement, and therefore any ambiguities shall be resolved without reference to which party may have drafted all or any provision herein.

//

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

ARTICLE XXVII
MEDICAL TESTING

27.     FIGHTER SHALL COMPLETE A FULL PHYSICAL MEDICAL EXAMINATION AND UNDERGO TESTING AND RECEIVE AFFIRMATIVE CLEARANCE THEREFROM PRIOR TO EACH BOUT INCLUDING, BUT NOT LIMITED TO THE FOLLOWING: CBC, HEPATITIS B, HEPATITIS C, HIV, RH AND BLOOD TYPE, RPR, PT, PTT, URINALYSIS WITH DRUG SCREENING, EKG, CT SCAN, MRI, DIALATED OPHTHALMOLOGICAL EXAM, AND SUCH OTHER TESTING AS ZUFFA OR THE ATHLETIC COMMISSION MAY REQUIRE.   THE MEDICAL EXAMINATION SHALL BE PERFORMED BY A NEUTRAL MEDICAL SERVICE PROVIDER DURING THE THIRTY (30) DAY PERIOD IMMEDIATELY PRECEDING THE DATE OF EACH BOUT. THE REPORT OF THE MEDICAL EXAMINATION OF FIGHTER CONTAINING THE RESULTS OF THE EXAMINATION AND TESTS SHALL BE DELIVERED TO ZUFFA NO LESS THAN TWENTY-ONE (21) DAYS PRIOR TO ANY BOUT AND MUST NOT CONTAIN ANY RESTRICTIONS ON FIGHTER'S ABILITY TO COMPETE.   ALL COSTS ASSOCIATED WITH THE MEDICAL EXAMINATION AND TESTS SHALL BE PAID BY FIGHTER.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the dates set forth below, the later of which shall be the Effective Date of this Agreement.

**ZUFFA, LLC**                                    **FIGHTER**

Signature: _____        Signature: _____

Printed Name: Dana White_____     Printed Name: __Eddie Alvarez_____

Title: _____President_____     Social Security No.: _____

Date: _____        Date: _____

                                              Passport No.: _____

                                              Passport Expiration Date:_____

APPROVED BY:

Signature: _____
          Kirk D. Hendrick
          Chief Legal Officer

23



November 14, 2012

<u>**CONFIDENTIAL**</u>

Eddie Alvarez

    **RE:   SIGNING BONUS**

Dear Eddie:

    Upon execution of the Promotional and Ancillary Rights Agreement (the "Agreement") between Zuffa, LLC ("Zuffa) and yourself ("Fighter") and the promotional and sponsorship activities to be performed as well as the grant of ancillary rights identified in the Agreement, Zuffa shall pay to you Two Hundred Fifty Thousand Dollars (US $250,000.00), payable, via check, in the amount of Eighty-Five Thousand Dollars (US $85,000.00), less all permissible or required deductions, following the completion of each of the first two (2) Bouts and Eighty Thousand Dollars (US$80,000.00), less all permissible or required deductions, following the completion of the third Bout, during the term of the Agreement.

    It is agreed and understood that in the event of an Acceleration, as defined in the Agreement, prior to the completion of the fourth Bout, as contemplated by the Agreement, Zuffa shall pay Fighter the remainder of this signing bonus owed hereunder.

                 Sincerely,


                 Dana White
                 President

ACKNOWLEDGED AND ACCEPTED BY:


_____

Eddie Alvarez

# **EXHIBIT E**

## DINES AND ENGLISH, L.L.C.

ATTORNEYS AT LAW

685 VAN HOUTEN AVENUE

CLIFTON, NEW JERSEY 07013

———

(973) 778-7575

FACSIMILE

(973) 778-7633

PATRICK C. ENGLISH
Email: dinesandenglish@aol.com
ALSO ADMITTED IN
THE UNITED STATES
DISTRICT COURTS FOR THE
SOUTHERN DISTRICT OF
NEW YORK AND CONNECTICUT

AARON DINES
(1923-2002)

———

JASON M. SANTARCANGELO
Email: jsdinesandenglish@verizon.net
OF COUNSEL
ALSO ADMITTED IN NEW YORK

December 13, 2012

**VIA EMAIL/PDF AND FACSIMILE**

Neal Tabachnick, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 West Olympic Blvd/9th Fl.
Los Angeles, CA 90064

Re:  **Eddie Alvarez**

Dear Mr. Tabachnick:

Reference is made to a letter agreement dated November 1, 2012 between Bellator Sport Worldwide, LLC and Eddie Alvarez, the intent of which was to allow Mr. Alvarez an acceleration of the opportunity to negotiate with a specified third party and confirming Bellator's right to match.

On November 28, 2012 you sent to Bellator a proposed contract from Zuffa, LLC.  My client had through December 18, 2012 to decide whether or not to match the offer.

After due consideration my client has decided to match the offer.

To that end, we enclose a contract.  While we would have preferred to use our own version of contract, in order to avoid any ambiguities regarding the match we have simply taken the Zuffa contract and made appropriate changes.  I am enclosing a redline version so that all changes are clear.  None are material.  I note that we use New Jersey choice of law (a non-material change) and cross reference to the WADA prohibited list (which is what Athletic Commissions are to use).  If, for some reason, you believe that Nevada law is material – and we do not – we would agree to it.

We also are sending a clean contract executed on behalf of Bellator.  We note the following line from the letter agreement dated November 1:

DINES AND ENGLISH, L.L.C.
ATTORNEYS AT LAW

Neal Tabachnick, Esq.
December 13, 2012
Page 2

> **"Should Bellator elect to match the offer, no further offers may be entertained by you and you will be obligated to contract with Bellator on the terms that Bellator agreed to match."**

Therefore, kindly have Mr. Alvarez execute the contract I am sending with this letter and transmit back to me.

In addition to what is contained in the contract and accompanying bonus letter, and though there is no obligation to do so, Bjorn Rebney, on behalf of Bellator, is prepared to provide the following for Mr. Alvarez:

A)  A Spike behind the scenes show for which Mr. Alvarez would be paid Twenty-Five Thousand Dollars ($25,000.00).  This would be produced in the first quarter of 2013.

B)  If Mr. Alvarez wins the World Title bout, he will be offered the position as a coach for the second season of the Bellator Reality Show, and should he coach the second season Mr. Alvarez will receive One Hundred Thousand Dollars ($100,000.00).

C)  Mr. Alvarez will be a guest host of Spike's "Road to the Championship" show on week 9 of Bellator Season 8.

As noted, Mr. Rebney and Bellator are not required to offer the above three items in order to match, but are doing so voluntarily out of regard for Mr. Alvarez.

Bellator looks forward to promoting Mr. Alvarez to continued success in his career.

Very truly yours,

DINES AND ENGLISH, L.L.C.

BY:  _____
PATRICK C. ENGLISH

/mat
Encls.