**COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
201-489-3000
201-489-1536 Facsimile

Frank Smith, Esq. (*pro hac vice* pending)
SMITH AND VERBIT, PL
9900 Stirling Road, Suite 303
Cooper City, Florida 33024
954-965-8350
954-241-6947 Facsimile

Attorneys for Defendant/Counterclaimant, Eddie Alvarez

| | | |
|---|---|---|
| BELLATOR SPORT WORLDWIDE, LLC, | : | **UNITED STATES DISTRICT COURT** |
| | : | **FOR THE DISTRICT OF NEW JERSEY** |
| Plaintiff, | : | |
| | : | Civil Action No. 2:13-cv-00063-JLL-MAH |
| | : | |
| v. | : | |
| | : | |
| | : | **VERIFIED ANSWER, AFFIRMATIVE** |
| EDDIE ALVAREZ AND JOHN DOES 1-5, | : | **DEFENSES AND COUNTERCLAIM** |
| | : | |
| Defendant. | : | |

Defendant/Counterclaimant, Eddie Alvarez ("Alvarez" or "Defendant"), by and through

his attorneys, Cole, Schotz, Meisel, Forman & Leonard, P.A., in response to the Complaint of

defendant, Bellator Sport Worldwide, LLC ("Bellator" or "Plaintiff"), hereby says:

## ANSWER

As to each corresponding numbered paragraph of the Complaint, Alvarez states as

follows:

51590/0001-9178368v1

## As to Jurisdiction and Venue

1.      Alvarez denies knowledge sufficient to form a belief as to the truth or falsity of the allegation in paragraph 1, accordingly the allegation is denied in its entirety and strict proof thereof is demanded.

2.      Alvarez admits the allegations set forth in Paragraph 2.

3.      Alvarez denies knowledge sufficient to form a belief as to the truth or falsity of the allegation in paragraph 3, accordingly the allegation is denied in its entirety and strict proof thereof is demanded.  Alvarez does not, however, contest the jurisdiction of this Court, and accordingly admits the allegation for jurisdictional purposes only.

4.      Alvarez denies knowledge sufficient to form a belief as to the truth or falsity of the allegation in paragraph 4, accordingly the allegation is denied in its entirety and strict proof thereof is demanded.

5.      Alvarez denies knowledge sufficient to form a belief as to the truth or falsity of the allegation in paragraph 5, accordingly the allegation is denied in its entirety and strict proof thereof is demanded.  Alvarez does not however, contest the jurisdiction of this Court, and accordingly admits the allegation for jurisdictional purposes only.

6.      Alvarez neither admits nor denies the allegations set forth in paragraph 6 as to the contract language as the contract speaks for itself. To the extent that the allegations in paragraph 6 attempt to provide, modify or interpret the language of the contract, the allegations are denied in their entirety and strict proof thereof is demanded.  As to the remainder of the allegations in paragraph 6, Alvarez admits them for establishment of proper venue purposes only, but denies them substantively as to his regularly doing business in New Jersey and demands strict proof thereof.

2

## AS TO "SUMMARY OF CASE
## AND GENERAL ALLEGATIONS"

7.     Alvarez denies the allegations set forth in paragraph 7 as the operative

"Promotional Agreement" was executed by Alvarez on October 28, 2008 ("Contract") and is

attached to the Counterclaim herein as Exhibit "A" and is accordingly incorporated by reference

herein.  (Notably, while attaching everyone else's confidential information, Plaintiff failed to

provide the Court a copy of its own contract).  Alvarez further denies that he was coming off a

loss at that time.  Alvarez neither admits nor denies the other allegations set forth in paragraph 7,

as the Contract speaks for itself. To the extent that the allegations in paragraph 7 attempt to

provide, modify or interpret the language of the Contract, the allegations are denied in their

entirety and strict proof thereof is demanded.

8.     Alvarez neither admits nor denies the contractual allegations set forth in

paragraph 8 as the Contract speaks for itself.  To the extent that the allegations in paragraph 8

attempt to provide, modify or interpret the language of the Contract, the allegations are denied in

their entirety and strict proof thereof is demanded.  As to the remainder of the allegations in

paragraph 8, they are merely Plaintiff's opinion that it "successfully" promoted Alvarez and

regarding the "highlights" of Alvarez's career, which opinions are denied in their entirety and

strict proof thereof is demanded.

9.     Alvarez denies the allegations set forth in Paragraph 9, except to admit that he lost

Bellator's lightweight title to Chandler and that Alvarez subsequently won his next two fights.

10.    Alvarez denies the allegations set forth in Paragraph 10.

11.    Alvarez admits the allegations set forth in Paragraph 11.

12.    Alvarez neither admits nor denies the allegations set forth in paragraph 12 as the

Contract speaks for itself. To the extent that the allegations in paragraph 12 attempt to provide,

3

modify or interpret the language of the Contract, the allegations are denied in their entirety and strict proof thereof is demanded.

13.    Alvarez neither admits nor denies the allegations set forth in paragraph 13 as the Contract speaks for itself. To the extent that the allegations in paragraph 13 attempt to provide, modify or interpret the language of the Contract, the allegations are denied in their entirety and strict proof thereof is demanded.

14.    Alvarez admits that he entered into the letter agreement attached as Exhibit "B" to the Complaint, but neither admits nor denies the allegations set forth in paragraph 14 relating to the terms of Exhibit "B", as that document speaks for itself. To the extent that the allegations in paragraph 14 attempt to provide, modify or interpret the language of Exhibit "B," the allegations are denied in their entirety and strict proof thereof is demanded.

15.    Alvarez neither admits nor denies the allegations set forth in paragraph 15 as Exhibits "C" and "D" speak for themselves. To the extent that the allegations in paragraph 15 attempt to provide, modify or interpret the language of Exhibits "C" and "D," the allegations are denied in their entirety and strict proof thereof is demanded.

16.    Alvarez neither admits nor denies the allegations set forth in paragraph 16 as Exhibits "E," "F" and "G" speak for themselves, except specifically to deny any allegation or implication that Bellator had "matched" Zuffa's proffered contract. To the extent that the allegations in paragraph 16 attempt to provide, modify or interpret the language of Exhibits "E," "F" and "G" the allegations are denied in their entirety and strict proof thereof is demanded.

17.    Alvarez denies the allegations in paragraph 17 as to Plaintiff matching "every financial term" and demands strict proof thereof. Alvarez does admit that Plaintiff "chang[ed]" the terms of Exhibit "D" in Plaintiff's offer.

4

18.     Alvarez denies knowledge sufficient to form a belief as to the truth or falsity of the allegations in paragraph 18, accordingly the allegations are denied in their entirety and strict proof thereof is demanded, except that Alvarez specifically denies Plaintiff's allegation purporting to interpret Paragraph 6.2 of Exhibit "D".

19.     Alvarez neither admits nor denies the allegations set forth in paragraph 19 as Exhibit "H" speaks for itself.  To the extent that the allegations in paragraph 19 attempt to provide, modify or interpret the language of Exhibit "H," the allegations are denied in their entirety and strict proof thereof is demanded.

20.     Alvarez neither admits nor denies the allegations set forth in paragraph 20 as Exhibits "I" and "J" speak for themselves, except that Alvarez specifically denies the allegation that Plaintiff "matched". To the extent that the allegations in paragraph 20 attempt to provide, modify or interpret the language of Exhibits "I" and "J," the allegations are denied in their entirety and strict proof thereof is demanded.

21.     Alvarez admits he has refused to execute Plaintiff's offer, but denies that he is obligated to do so.

### AS TO "COUNT I"

### BREACH OF CONTRACT

22.     Alvarez hereby incorporates his responses to the allegations in paragraphs 1 through 22 of the Complaint as if fully set forth herein.

23.     Alvarez neither admits nor denies the allegations set forth in paragraph 23 as the Contract and Exhibit "B" speak for themselves. To the extent the allegations in paragraph 23 attempt to provide, modify or interpret the language of the Contract and Exhibit "B," the allegations are denied in their entirety and strict proof thereof is demanded.

5

24.     Alvarez denies that Plaintiff matched the offer by Zuffa and demands strict proof thereof. As to the allegation referring to the Exhibit "G" "comparison", Alvarez neither admits nor denies that allegation, as Exhibit "G" speaks for itself. To the extent that the allegations in paragraph 24 attempt to provide, modify or interpret the language of Exhibit "G," the allegations are denied in their entirety and strict proof thereof is demanded.

25.     Alvarez denies the allegations set forth in paragraph 25 in their entirety and demands strict proof thereof.

26.     Alvarez denies the allegations set forth in paragraph 26 in their entirety and demands strict proof thereof.

27.     Alvarez denies the allegations set forth in paragraph 27 in their entirety and demands strict proof thereof.

**WHEREFORE**, Alvarez demands judgment denying the relief sought in Count I of the Complaint, and awarding attorneys' fees, costs of suit and such further relief as the Court deems just and equitable.

## AS TO "COUNT 2"

### TORTIOUS INTERFERENCE

28.     Alvarez hereby incorporates his responses to the allegations in paragraphs 1 through 27 of the Complaint as if fully set forth herein.

29.     Alvarez denies knowledge sufficient to form a belief as to the truth or falsity of the allegations in paragraph 29, accordingly the allegations are denied in their entirety and strict proof thereof is demanded.

30.     Alvarez denies the allegations set forth in paragraph 30 in their entirety and demands strict proof thereof.

6

31.    Alvarez denies the allegations set forth in paragraph 31 in their entirety and demands strict proof thereof.

32.    Alvarez denies the allegations set forth in paragraph 32 in their entirety and demands strict proof thereof.

**WHEREFORE**, Alvarez demands judgment denying the relief sought in Count I of the Complaint, and awarding attorneys' fees, costs of suit and such further relief as the Court deems just and equitable.

### AFFIRMATIVE DEFENSES

33.    As and for a first defense, Alvarez alleges the Plaintiff has failed to state a cause of action upon which relief can be granted.

34.    As and for a second defense, Alvarez alleges that the relief sought by Plaintiff is barred by the 13th Amendment of the United States Constitution and violative of Alvarez's right against involuntary servitude.

35.    As and for a third defense, Alvarez alleges that Plaintiff has failed to allege fundamental facts necessary for the Plaintiff to proceed in this manner.  A complaint must allege sufficient facts to show that the pleader is entitled to relief.  Here, the Plaintiff has failed to allege sufficient facts to show that they are entitled to any relief.  Based on the allegations contained in the Complaint, Plaintiff has no claim against Alvarez and Alvarez has no obligations to Plaintiff.  As such, the Complaint is improper and must be barred.

36.    As and for a fourth defense, Alvarez alleges that Plaintiff has failed in accordance with Fed.R.Civ.P 9(c) to address conditions precedent.

37.    As and for a fifth defense, Alvarez alleges the defense of estoppel.

7

38.     As and for a sixth defense, Alvarez alleges the defense of illegality in that the contractual language violates Alvarez's civil rights.

39.     As and for a seventh defense, Alvarez alleges the defense of laches.

40.     As and for an eighth defense, Alvarez alleges the defense of waiver.

41.     As and for a ninth defense, Alvarez alleges that Plaintiff has unclean hands in this matter due to its conduct.

42.     As and for a tenth defense, Alvarez alleges that Plaintiff first breached the contract at issue and when it did so, all performance on the part of Alvarez was excused.

43.     Alvarez also alleges the Complaint contains insufficient information to permit Alvarez to raise all of potentially appropriate defenses and, therefore, Alvarez reserves its right to amend and/or supplement this Answer with additional affirmative defenses.

## COUNTERCLAIM

Counterclaimant, Eddie Alvarez ("Alvarez"), by and through his attorneys, Cole, Schotz, Meisel, Forman & Leonard, P.A., complaining against counterclaim-defendant, Bellator Sport Worldwide, LLC ("Bellator"), alleges and says:

## INTRODUCTION

1.     Alvarez, a professional mixed martial arts ("MMA") fighter, has brought this counterclaim seeking a declaration of his rights vis-à-vis an expired contract with Bellator, an MMA fight promotion company. Alvarez also is seeking injunctive relief attendant thereto, and is seeking damages based on Bellator's bad faith and tortious actions since the expiration of the parties' contract.

## PARTIES AND JURISDICTION

2.     Alvarez, an individual, is a resident of the State of Pennsylvania.

8

3.      Bellator is a Delaware Limited Liability Company with its principal place of business, upon information and belief, in Newport Beach, California. It actively does business in New Jersey and its contracts, including the contract it had with Alvarez, provide for New Jersey jurisdiction and venue.

4.      The amount in dispute related to this controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and counsel fees.

5.      This Court has jurisdiction pursuant to 28 U.S.C. §1332 in that there is full diversity between the parties and the amount in dispute exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and counsel fees.

6.      Venue is proper in this district in that the contract underlying this dispute contains a choice of law and forum selection clause providing for venue in this district.

## CONTRACT AT ISSUE

7.      On or about October 28, 2008, Alvarez and Bellator entered into a promotion agreement ("Bellator Contract"), which had been drafted by Bellator. A copy of the Bellator Contract is attached hereto and made a part hereof as Exhibit "A."

8.      The Bellator Contract has expired. The Bellator Contract, however, contains a section entitled "FIRST/LAST REFUSAL" which provides as follows:

**18. FIRST/LAST REFUSAL**

A) Upon expiration of the Term, FIGHTER [Alvarez] agrees to negotiate exclusively and in good faith with PROMOTER [Bellator] regarding the extension or renewal of the Term for a period of ninety (90) days following the expiration of the Term.

B) In the event no such agreement is reached between FIGHTER and PROMOTER during the aforementioned ninety (90) day period, FIGHTER may negotiate with other promotional entities, subject to PROMOTER's right to match the terms of any agreement offered to FIGHTER by such

9

other promotional entity. PROMOTER's right to match shall begin at the end of the ninety (90) day period and last for one (1) year.

C) FIGHTER shall provide PROMOTER with prompt written notice of any such offer, containing full details in regards thereof. Such notice shall constitute an exclusive, irrevocable offer to contract with PROMOTER on the same terms and conditions. PROMOTER shall have fourteen (14) business days after receipt of said notice to either accept or reject said offer. If PROMOTER rejects said offer, FIGHTER may accept said offer with the promotional entity on the same terms and conditions and without any modifications thereto. If the offer is modified in any material way, such modification shall give rise to another option for PROMOTER to match the terms of the offer as modified.

D) PROMOTER's failure to accept any offer shall not constitute a waiver of last refusal with respect to subsequent offers.

9.     By letter agreement dated November 1, 2012 ("Letter Agreement"), Bellator

modified the "FIRST/LAST REFUSAL" provision, waiving its period of exclusive negotiation

and allowing Alvarez to negotiate a proposed contract with Zuffa, LLC (Zuffa, LLC d/b/a

Ultimate Fighting Championship ® hereinafter "Zuffa" (entity) or "UFC" (brand)), which

Bellator would then get fourteen (14) business days to "match" an offer from Zuffa. A copy of

the Letter Agreement is attached hereto and made a part hereof as Exhibit "B."

10.     Zuffa did make an offer to Alvarez ("Zuffa Offer"), which offer was delivered by

Alvarez to Bellator on November 28, 2012, giving Bellator until December 18, 2012 to match

the Zuffa Offer. Bellator has attached a copy of the Zuffa Offer to its Complaint as Exhibit "D",

and, to the extent it properly did so, Alvarez incorporates the Zuffa Offer herein by reference.

11.     On December 13, 2012, Bellator returned a proposed contract to Alvarez with

certain changes ("Bellator Offer"), claiming none of the changes were "material." Bellator has

attached a copy of the Bellator Offer to its Complaint as Exhibit "F", and, to the extent it

properly did so, Alvarez incorporates the Bellator Offer herein by reference.

12.     Bellator acknowledged that the Bellator Offer made "changes" to the Zuffa Offer and enclosed a "redline version," but claimed the changes it made were immaterial. Apparently Bellator believes that the "FIRST/LAST REFUSAL" provision and Letter Agreement allowed them to make changes to the terms and conditions of the Zuffa Offer and still match the Zuffa Offer.

13.     Alvarez believes the "FIRST/LAST REFUSAL" provision and the Letter Agreement do not allow Bellator to make any changes, material or otherwise, to the terms and conditions of the Zuffa Offer and be deemed a matching offer, and that, in any event, the Bellator Offer did not match the Zuffa Offer.

14.     Bellator's position is that it has "matched" the Zuffa Offer and that Alvarez, therefore, may not sign the Zuffa Offer.

15.     Despite claiming it "matched" the Zuffa Offer, Bellator attached a "redline" as Exhibit "G" to the Complaint which is incorporated herein by reference.  The fact that Bellator had to produce a "redline" of its changes is evidence in and of itself of Bellator's failure to match the Zuffa Offer.

16.     A review of Exhibit "G" shows that Bellator, in addition to changing the contracting entity from "ZUFFA" to "BELLATOR," made the following changes (in section order):

        a.      Throughout section 2.3, "UFC" was changed to "BELLATOR" as to the "brand"
                and "sponsor."  This is a substantive change to the Zuffa Offer, as the "brands"
                are not equal, nor are the sponsors.

11

b.   Throughout sections 2.4, 2.5 and 2.6, and elsewhere in the Bellator Offer, "UFC" also was changed to "BELLATOR" as to brand, which, again, is a substantive change to the terms of the Zuffa Offer.

c.   Sections 3.1 through 3.6 deal with the actual promotion and scheduling of bouts. In this context, the changing of "ZUFFA" to "BELLATOR" is not just a simple substitution of the contracting entity, but necessarily entails different "matchmakers," different "fighters" and different "venues."  Moreover, Bellator is a tournament-based promotion, requiring fighters to progress through a tournament structure, while Zuffa does not book fighters based upon a tournament, but rather for individual promoted bouts;

d.   In section 3.7, Bellator changed the jurisdiction over a bout from Nevada to New Jersey and also the rules from Nevada to New Jersey;

e.   Section 3.8 changed Fox Network Television to Spike TV.  Bellator has admitted there are differences between the two networks in both viewer exposure and demographics;

f.   Section 3.9, which, in the Zuffa Offer, offered Alvarez at least three (3) appearances on other UFC branded events, is now "BELLATOR" branded events, although Alvarez is unclear which other "BELLATOR" branded events exist, noting that Bellator 360 just debuted;

g.   Section 4.3 removed a reference in the Zuffa Offer to "The Ultimate Fighter," a current reality television series, and changed it to some unknown (and apparently not yet existing) Bellator reality television series;

12

h.   In Section 5, Bellator once again removed reference to the Nevada Rules and this time substituted "the standard Bellator Bout Agreement;"

i.   Section 6.2 of the Zuffa Offer provides for substantial additional income for Alvarez for his first bout through pay-per-view bonus. Changing "ZUFFA" and "UFC" to "BELLATOR" in that section is a significant substantive revision to the Zuffa Offer. Bellator has no history of broadcasting via pay-per-view, yet it "intends" to create a pay-per-view event that in good faith would likely yield more than four hundred thousand (400,000) views;[1]

j.   Section 7.1(f) changed "Octagon" to "Cage" pointing out another difference in that Zuffa uses a true eight (8) sided structure for its bouts, while the Bellator "Cage" is a circle;

k.   In Section 8.5, the Bellator Offer added: "Fighter is urged to consult the World Anti Doping (WADA) prohibited list for a list of banned substances;"

l.   In Section 8.6, Bellator added: "or for other improper conduct;"

m.   Strangely, in section 13.2(a), Bellator represents that it is a New Jersey Limited Liability Company. This is presumably a typographical error as, per Bellator's Complaint, it is a Delaware entity and elsewhere in the Bellator Offer, it is referred to as a Delaware entity;

---

[1] Bellator in paragraph 18 of the Complaint attempts to deflect the issue of the pay-per-view income by implying that Zuffa was in some way being deceptive or illusory as it only "intended" to give a pay-per-view bonus to Alvarez, but did not explicitly "guarantee" that Alvarez would have his first fight for the title and on a pay-per-view. This argument by Bellator is simply untenable and unconscionable to anyone with more than the most basic understanding of the MMA industry and Zuffa's reputation in the industry. In fact, pursuant to Exhibit "C" annexed hereto and incorporated by reference, Zuffa confirmed that it had intended to have Alvarez fight on a card headlined by one of the premier talents in all of mixed martial arts, virtually guaranteeing a substantial payday for Alvarez. That opportunity has now been lost, but a similarly substantial (although lesser based upon historical averages) opportunity for Alvarez is available for April 27, 2013, but will also be lost unless the Court gives Alvarez permission to participate in the event by January 27, 2013.

n. In Section 21.1, the Bellator Offer removes advertising/sponsor restrictions against Spike and any Viacom-owned network, and substitutes in a restriction against "Fox" and any "news corporation owned network;"

o. Section 25.1 and 25.2 change the choice of law and venue provisions from Nevada (Clark County) to New Jersey (although as to this singular point, Bellator did agree they would change it back if asked);

17. All of these "changes" preclude the Bellator Offer being a "match" of the Zuffa Offer.

18. Further, belying Bellator's position that the offers "matched" is the fact that although in its words, it was "not required to offer" anything more, it felt compelled to further modify the Bellator Offer by providing:

A) A Spike behind the scenes show for which Mr. Alvarez would be paid Twenty-Five Thousand Dollars ($25,000.00). This would be produced in the first quarter of 2013.

B) If Mr. Alvarez wins the World Title bout, he will be offered the position as a coach for the second season of the Bellator Reality Show, and should he coach the second season Mr. Alvarez will receive One Hundred Thousand Dollars ($100,000.00).

C) Mr. Alvarez will be a guest host of Spike's "Road to the Championship" show on week 9 of Bellator Season 8.

19. Additionally, on December 18, 2012, Bellator again further modified the Bellator Offer and Zuffa Offer, by, in addition to the provisions set forth in paragraph 18 (A, B and C) above, amending Paragraph 3.8 of the Bellator and Zuffa Offers, to state that all bouts will

14

appear on either on Spike TV <u>or</u> Pay-Per-View, and providing for at least two (2) replays on Spike for bouts telecast on Spike. This "Addendum" is attached as Exhibit J to Bellator's Complaint, and is incorporated by reference herein. This revision to Paragraph 3.8 now actually provides that Bellator never has to do a Pay-Per-View event with Alvarez.

20.     These additional "sweeteners" (for lack of a better word) might be relevant if the Court is to engage in a weighted comparison of the subject contracts, buying into Bellator's purported defense to the failure to match of "immateriality." In the first instance, however, these additions inject completely new terms into the process which make the Bellator Offer **less** of a "match" on its face, than it otherwise would be without the additional terms. The offering of the additional terms is tantamount to an admission by Bellator that they did not "match."

21.     Alvarez's inability to move forward with the Zuffa Offer or any other offer, is damaging him and causing him irreparable harm on an ongoing basis.

22.     As a result, Alvarez is caught in "limbo" until this matter is resolved, and various unique opportunities will be lost the longer this matter is pending.

23.     Alvarez already has lost one substantial opportunity to fight at UFC 158 which is to take place on March 16, 2013.

24.     If no relief is obtained by Alvarez before January 27, 2013, he will lose a second opportunity, to fight on the Jones v. Sonnen card for Zuffa on April 27, 2013.

25.     Alvarez is in the prime of his career and wants to fight "the best fighters" he can. Upon information and belief, Zuffa is generally regarded as a more reputable organization than Bellator and, further, the caliber of fighters in Zuffa/UFC is superior to that in Bellator.

26.     Alvarez's earning potential is not simply limited to his pay for showing up or winning, but also is tied, without limitation, to pay-per-view buys (in this case), the amount of

sponsorship dollars he can generate and ultimately, his popularity amongst the mixed martial arts fan base in general.

27.     In each of these factors, at this time, Zuffa offers Alvarez a far greater earning potential than does Bellator. This is simply the restatement of a generally accepted public understanding of the market reports and similar commercial publications.

28.     Each of these factors is being irreparably injured as Alvarez remains in limbo and unable to fight for Zuffa.

29.     In summary, Bellator had to match the Zuffa Offer and did not. Bellator is now using its "FIRST/LAST REFUSAL" in the nature of a *de facto* covenant not to compete. Despite the fact that Bellator has sought specific performance under a personal services contract (which is a violation of Alvarez's constitutional rights), it is, in effect, through its Complaint, only seeking to preclude Alvarez from contracting with Zuffa. Such behavior is not only ethically and morally questionable, but cannot be countenanced by this Court.

30.     Bellator could have written the Bellator Contract and the "FIRST/LAST REFUSAL" any way it saw fit, but chose to make it an exact match and must be held to its language.

31.     Alvarez has complied with all conditions precedent to the bringing of this action.

## COUNT I – DECLARATORY RELIEF

32.     Alvarez hereby repeats and realleges each of his allegations set forth above as if set forth fully herein.

33.     28 U.S.C.A. § 2201 states:

§ 2201. Creation of remedy
(a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of

16

title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

(b) For limitations on actions brought with respect to drug patents see section 505 or 512 of the Federal Food, Drug, and Cosmetic Act, or section 351 of the Public Health Service Act.

28 U.S.C.A. § 2201 (West)

34.     28 U.S.C.A. § 2202 states:

§ 2202. Further relief

Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

28 U.S.C.A. § 2202 (West)

35.     There exists a dispute between Alvarez and Bellator as to Alvarez's rights under the Bellator Contract, as modified by the Letter Agreement.

36.     Alvarez is entitled to have this Court declare his rights relative to the Bellator Contract, the Letter Agreement, the Zuffa Offer and the Bellator Offer.

37.     Pursuant to Federal Rule of Civil Procedure 57, the "court may order a speedy hearing of a declaratory judgment action" and Alvarez respectfully requests that this action proceed in such a speedy manner.

WHEREFORE, ALVAREZ hereby respectfully requests that this Court enter a Final Judgment in his favor and against BELLATOR, declaring:

17

a.  That the Bellator Contract and specifically the "FIRST/LAST REFUSAL" provision, as modified by Letter Agreement, allowed Bellator to match all terms and conditions of the Zuffa Offer;

b.  That the Zuffa Offer was properly delivered to Bellator and was subject to the "FIRST/LAST REFUSAL" provision as modified by the Letter Agreement;

c.  That the Bellator Offer did not "match" the Zuffa Offer;

d.  That Alvarez may immediately execute the Zuffa Offer;

e.  That Alvarez has no further obligations under the Bellator Contract;

f.  Such injunctive relief against Bellator as may be necessary to further enable Alvarez to fight for Zuffa, without interference from Bellator;

g.  An award of damages as may be proper under 28 U.S.C.A. § 2202; and

h.  Such other, further and different relief as the Court may deem just proper and equitable under the circumstances.

## COUNT II - INJUNCTION

38.    Alvarez hereby repeats and realleges each of his allegations set forth above as if set forth fully herein.

39.    Alvarez's inability to move forward with the Zuffa Offer is damaging him and causing him immeasurable and irreparable harm on an ongoing basis.  The loss of the ability to fight on a card with St-Pierre is the loss of a once in a lifetime opportunity.  Each of the UFC cards is a unique conglomeration of fighters, each of whom in Bellator's words is "special, unique, unusual and extraordinary in character."[2]

---

[2] See Section 20 of the Bellator Contract.

40.    Accordingly, Alvarez could avail himself of the upcoming UFC events which are of a personal, specific and unique nature, and in which Alvarez could participate and profit, but for the Bellator position that it "matched" and Bellator's threat of litigation. The Court is respectfully directed to the Zuffa letter of January 10, 2013 which confirms the lost UFC 158 opportunity and also confirms the January 27, 2013 deadline before Alvarez is further irreparably harmed.

41.    Such irreparable harm will continue unless enjoined by the Court.

42.    The harm to Alvarez if an injunction is not ordered will greatly exceed the harm to Bellator, if any, if an injunction is ordered. [3]

43.    Alvarez is likely to succeed on the merits of the claims set forth herein.

44.    The public interest favors the imposition of injunctive relief in this matter.

WHEREFORE, ALVAREZ hereby respectfully requests that this Court enter a temporary, preliminary and/or permanent injunction in his favor and against BELLATOR as follows:

    a.    Precluding Bellator from interfering in any way with Alvarez's rights to execute the Zuffa Offer and interfering with Alvarez's ongoing relationship with Zuffa;

    b.    Allowing Alvarez to immediately contract with any promoter without interference from Bellator; and

    c.    Such other, further and different relief as the Court may deem just proper and equitable under the circumstances.

---

[3] See Section 20 of the Bellator Contract wherein Bellator had Alvarez acknowledge that an injunction is appropriate in these circumstances; the corollary is also true. Section 20 also sets the bond amount "not to exceed Five Hundred Dollars ($500)"; once again, as to any Alvarez injunction, the corollary is also true.

19

## COUNT III – INTENTIONAL INTERFERENCE
## WITH PROSPECTIVE ECONOMIC ADVANTAGE

45.    Alvarez hereby repeats and realleges each of his allegations set forth above as if set forth fully herein.

46.    By, among other things, intentionally and in bad faith delivering the Bellator Offer claiming it matched the Zuffa Offer when it did not and when Bellator had no ability or intention to perform certain portions of the Bellator Offer, Bellator's conduct constitutes, among other things, intentional interference with Alvarez's prospective economic advantage.

47.    Alvarez had a reasonable expectation that Bellator would extend any "matching" offer in good faith and with Bellator's honest intention of fully performing any "matching" offer.

48.    Defendant's actions were, and continue to be, without justification or excuse.

49.    Defendant's actions were, and continue to be, willful, wanton, malicious and/or in reckless disregard of Alvarez's rights.

50.    As a direct and proximate result of Defendant's wrongful conduct, as aforesaid, Alvarez has suffered, and will continue to suffer, substantial damages.

WHEREFORE, ALVAREZ hereby respectfully requests that this Court enter a Final Judgment in his favor and against BELLATOR, and/or in the alternative, as follows:

     a.    Compensatory, consequential and incidental damages;

     b.    Punitive damages;

     c.    Interest;

     d.    Reasonable attorneys' fee and costs of suit;

     e.    Such other, further and different relief as the Court may deem just proper and equitable under the circumstances.

51590/0001-9178368v1

## COUNT IV - BREACH OF CONTRACT

51.    Alvarez hereby repeats and realleges each of his allegations set forth above as if set forth fully herein.

52.    The Bellator Contract requires Bellator to perform certain enumerated duties and obligations.

53.    The Bellator Contract also is subject to the implied covenant of good faith and fair dealing.

54.    Defendant breached both the contract and the implied covenant of good faith and fair dealing in tendering the Bellator Offer.

55.    Alvarez has been damaged by Defendant's breach as aforesaid.

WHEREFORE, ALVAREZ hereby respectfully requests that this Court enter a Final Judgment in his favor and against BELLATOR, and/or in the alternative, as follows:

        a.    Compensatory, consequential and incidental damages;

        b.    Interest;

        c.    Reasonable attorneys' fee and costs of suit;

        d.    Such other, further and different relief as the Court may deem just proper and equitable under the circumstances.

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
Attorneys for Plaintiff, Eddie Alvarez

By: _____
Steven R. Klein, Esq.
Adam J. Sklar, Esq.

DATED:  January 14, 2013

21

## Certification Pursuant to L. Civ. R. 11.2

Pursuant to Local Civil Rule 11.2, I hereby certify that the claims brought by Eddie

Alvarez are not the subject of any other action pending in any court, or of any pending arbitration

or administrative proceeding.

_____
Steven R. Klein

DATED:  January 14, 2013

22

## VERIFICATION

Eddie Alvarez, of full age, hereby certifies as follows:

1.      I, Eddie Alvarez, am the defendant/counterclaimant in this action and am familiar with the facts set forth herein.

2.      I hereby certify that the statements made in the foregoing Answer and Counterclaim are true and correct to the best of my knowledge, information and belief; I understand that these statements are made subject to punishment.

                                        _____
                                                Eddie Alvarez

DATED:  January 14, 2013


## CERTIFICATE OF FACSIMILE SIGNATURE

I certify that Eddie Alvarez acknowledged the genuineness of his facsimile signature and that a copy of this Verified Answer and Counterclaim with the original signatures affixed will be filed if requested by the Court or any party.

                                        _____
                                                Steven R. Klein

DATED:  January 14, 2013


23