COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
A Professional Corporation
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
201-489-3000
201-489-1536 Facsimile

Frank Smith, Esq. (*pro hac vice* pending)
SMITH AND VERBIT, PL
9900 Stirling Road, Suite 303
Cooper City, Florida 33024
954-965-8350
954-241-6947 Facsimile

Attorneys for Defendant/Counterclaimant, Eddie Alvarez

| | |
|---|---|
| BELLATOR SPORT WORLDWIDE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>EDDIE ALVAREZ AND JOHN DOES 1-5,<br><br>Defendant. | UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF NEW JERSEY<br><br>Civil Action No. 2:13-cv-00063-JLL-MAH |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S APPLICATION FOR ENTRY OF AN ORDER TO SHOW CAUSE FOR INJUNCTIVE RELIEF PURSUANT TO FED. R. CIV. P. 65 AND L. CIV. R. 65.1**

Of Counsel:
Steven R. Klein, Esq.
Adam J. Sklar, Esq.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS .........................................................................................................2

LEGAL ARGUMENT ................................................................................................................3

I. ALVAREZ'S REQUEST FOR A PRELIMINARY INJUNCTION SHOULD BE GRANTED BECAUSE HE SATISFIES THE THRESHOLD REQUIREMENTS FOR GRANTING SUCH AN INJUNCTION ...............................................................3

   A. Alvarez is Likely to Succeed on the Merits of his Claim that Bellator Did Not Match Zuffa's Proposed Contract ...............................................................3

   B. Alvarez Will Suffer Irreparable Harm if He is Unable to Fight for Zuffa During the Pendency of this Litigation .........................................................6

   C. Granting Alvarez Preliminary Relief Will Not Result in Even Greater Harm to Bellator ..................................................................................................9

   D. The Public Interest Favors Granting Alvarez Preliminary Injunctive Relief ..................................................................................................................10

CONCLUSION .........................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

**Cases**

Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421 (3d Cir. 1994) ........ 10

Denver Rockets v. All-Pro Management, Inc., 324 F. Supp. 1049 (C.D. Cal. 1971) ..................... 8

E. Brunswick Sewerage Auth. v. E. Mill Assocs., 838 A.2d 494 (N.J. Super. Ct. App. Div. 2004) ........................................................................................................................... 4-5

Gov't Guarantee Fund of Republic of Finland v. Hyatt Corp., 95 F.3d 291 (3d Cir. 1996) ........... 9

Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797 (3d Cir. 1989) .............................. 6

Jackson v. National Football League, 802 F. Supp. 226 (D. Minn. 1992) .................................... 7

Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700 (3d Cir. 2004) ..................................................... 3

Linseman v. World Hockey Ass'n, 439 F. Supp 1315 (D. Conn 1979) ...................................... 7-8

Mazzeo v. Kartman, 560 A.2d 733 (N.J. Super. Ct. App. Div. 1989) ........................................... 4

M.J. Paquet, Inc. v. N.J. Dept. of Transp., 794 A.2d 141 (N.J. 2002) .......................................... 4

Oburn v. Shapp, 521 F.2d 143 (3d Cir. 1975) ............................................................................... 3

Schor v. FMS Fin. Corp., 814 A.2d 1108 (N.J. Super. Ct. App. Div. 2002) ................................. 6

St. George's Dragons, L.P. v. Newport Real Estate Group, 971 A.2d 1087 (N.J. Super. Ct. App. Div. 2009) ............................................................................................................. 4

Wellmore Builders, Inc. v. Wannier, 140 A.2d 422 (N.J. Super. Ct. App. Div.), certif. granted, 142 A.2d 710 (1958) ................................................................................................ 4

**Statutes and Rules**

Fed. R. Civ. P. 65 ........................................................................................................................... 1

L. Civ. R. 65.1 ............................................................................................................................ 1, 3

28 U.S.C. § 2201 ............................................................................................................................ 4

## PRELIMINARY STATEMENT[1]

Defendant/Counterclaimant, Eddie Alvarez ("Alvarez"), makes this application for entry of an Order to Show Cause, pursuant to Fed. R. Civ. P. 65 and Local Civ. R. 65.1, so that he may continue to engage in his chosen occupation, as a professional mixed-martial arts fighter, without interference from plaintiff, Bellator Sport Worldwide, LLC ("Bellator"), and without further delay and consequent irreparable harm to his career and reputation. As set forth in Alvarez's Verified Counterclaim and herein, Bellator has failed to match the terms of the contract offered by Zuffa, LLC ("Zuffa") d/b/a Ultimate Fighting Championship. Alvarez currently faces another specific deadline from Zuffa to be able to fight at a major event, to be aired on pay-per-view, on April 27, 2013. Zuffa will not promote or contract with Alvarez until it has Court permission to do so. In order for Alvarez to participate in the April 27, 2013 event, Zuffa must obtain such Court permission by January 27, 2013, a full ninety days prior to the event.

Alvarez, therefore, seeks entry of an Order to Show Cause requiring Bellator to show cause on or before Friday, January 25, 2013, why Bellator should not be restrained from interfering with Alvarez's prospective contract with Zuffa and why Alvarez should not be permitted to contract with Zuffa, so that he may participate in Zuffa's April 27, 2013 event.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Verified Counterclaim submitted herewith.

51590/0001-9175912v1

## STATEMENT OF FACTS

The facts of this matter are specifically set forth in the Verified Answer and Counterclaim submitted herewith and are incorporated herein by reference.

# LEGAL ARGUMENT

## I. ALVAREZ'S REQUEST FOR A PRELIMINARY INJUNCTION SHOULD BE GRANTED BECAUSE HE SATISFIES THE THRESHOLD REQUIREMENTS FOR GRANTING SUCH AN INJUNCTION

"Any party may apply for an order requiring an adverse party to show cause why a preliminary injunction should not issue, upon the filing of a ... verified counterclaim...." L. Civ. R. 65.1(a). To obtain a preliminary injunction, the applicant must demonstrate the following: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting the preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004).

As described in the Counterclaim, Alvarez must proceed, at least initially, by order to show cause rather than by motion, because unless Alvarez obtains at least a preliminary determination by January 27, 2013 of his right to participate in Zuffa's April 27, 2013 pay-per-view event, that particular opportunity will be lost forever. See L. Civ. R. 65.1 (requiring showing of basis for proceeding by order to show cause, rather than notice of motion).

### A. Alvarez is Likely to Succeed on the Merits of his Claim that Bellator Did Not Match Zuffa's Proposed Contract

The party seeking preliminary injunctive relief need only "make a prima facie case showing a reasonable probability that it will prevail on the merits." Oburn v. Shapp, 521 F.2d 143, 148 (3d Cir. 1975). Here, it is clear from the relevant documents themselves that Bellator failed to match the terms and conditions of the Zuffa Proposal. Bellator's counterproposal, as reflected in the redline of the Zuffa Proposal attached as Exhibit G to Bellator's Complaint, is prima facie evidence of Bellator's failure to match, and the inquiry need go no further.

The Declaratory Judgment Act allows "any court of the United States, upon the filing of an appropriate pleading, [to] declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could have been sought." 28 U.S.C. § 2201. In the present case, in Count I of his Counterclaim, Alvarez seeks a declaration of his rights vis-à-vis Section 18 of the Bellator Contract, as modified by the Letter Amendment. Specifically, Alvarez seeks a judgment declaring that the Bellator Offer failed to match the same terms and conditions as the Zuffa Offer, and that, therefore, Alvarez may contract with Zuffa under the terms and conditions set forth in the Zuffa Offer.

As a general principle, a right of first refusal "'limits the right of the owner to dispose freely of his property by compelling him to offer it first to the party who has the first right to buy.'" St. George's Dragons, L.P. v. Newport Real Estate Group, 971 A.2d 1087, 1098 (N.J. Super. Ct. App. Div. 2009) (quoting Mazzeo v. Kartman, 560 A.2d 733, 736 (N.J. Super. Ct. App. Div. 1989)). Importantly, parties are free to structure a right of first refusal in various ways. See id. For instance, a contract's first-refusal clause often defines "'a bona fide third party offer as the triggering event.'" See id. (quoting Mazzeo, 560 A.2d at 736).

No matter its form, "the terms of a right of first refusal clause are to be construed employing the same rules of construction applicable to any other type of contract." Id. That is, New Jersey courts construe first-refusal clauses consistent with "'justice and common sense and the probable intention of the parties.'" Id. (quoting Wellmore Builders, Inc. v. Wannier, 140 A.2d 422, 428 (N.J. Super. Ct. App. Div.), certif. granted, 142 A.2d 710 (1958)). Accordingly, a first-refusal clause should be given its "plain and ordinary meaning." See E. Brunswick Sewerage Auth. v. E. Mill Assocs., 838 A.2d 494, 497 (N.J. Super. Ct. App. Div. 2004) (citing M.J. Paquet, Inc. v. N.J. Dept. of Transp., 794 A.2d 141, 152 (N.J. 2002)). So long as the terms

of the clause are clear, a court must enforce it as written. See id. After all, "[i]t has been decided many times and in many cases that the court will not make a different or a better contract than the parties themselves have seen fit to enter into." Id.

Here, Section 18 of the Bellator Contract states that Alvarez "may negotiate with other promotional entities, subject to [Bellator's] right **to match the terms of the agreement** offered to [Alvarez]...." (emphasis added). Alvarez must provide Bellator notice of such offer, "containing full details in regards thereof," which "shall constitute an exclusive, irrevocable offer to contract with [Bellator] on **the same terms and conditions**." See Counterclaim, Ex. A (emphasis added).

In the Letter Agreement, Bellator agreed to waive its period of exclusive negotiation with Alvarez following the expiration of the Bellator Contract, to allow Alvarez to negotiate with Zuffa only. The Letter Agreement further provided that once Alvarez received an offer from Zuffa, he was "obligated to produce to Bellator a true copy of the proposed agreement with Zuffa, LLC, at which time Bellator shall have fourteen (14) business days… to consider whether it will **match the terms of the offer**. Should Bellator elect to **match the offer**, … [Alvarez] will be obligated to contract with Bellator on the terms that Bellator agreed **to match**." See Complaint, Ex. B (emphasis added).

The plain language of the Bellator Contract, as modified by the Letter Agreement, provides that Bellator must "match" the terms of the Zuffa Offer, and must contract based on the "same" terms and conditions. Bellator has patently failed to do so. As set forth at length in Paragraph 16 of Alvarez's Verified Counterclaim, the Bellator Offer contained numerous and significant substantive changes to the Zuffa Offer. While any one of those changes prevents the Bellator Offer from being a "match" or being the "same" as the Zuffa Offer, the aggregate of the

changes to the terms and conditions makes it clear that Alvarez is likely to succeed on the merits of his claim for a declaratory judgment that the Bellator Offer did not "match" the Zuffa Offer.

Among the changes made by Bellator to the Zuffa Offer was to change Section 3.8 to reflect that an event featuring Alvarez would be televised on Spike TV instead of Fox Network Television. Bellator has admitted there are differences between the two networks in both viewer exposure and demographics, so such change cannot be a "match" and broadcasting a bout on those two networks clearly is not the "same". Also, as set forth in the Verified Counterclaim, Bellator substituted its name for that of Zuffa and UFC in a number of provisions, where Bellator could not perform either at all or anywhere near the level of Zuffa, such as the pay-per-view bonus provision.

To the extent there is any ambiguity in the language of Section 18 or the Letter Agreement, which there is not, then "the writing is to be strictly construed against the party preparing it." Schor v. FMS Fin. Corp., 814 A.2d 1108, 1113 (N.J. Super. Ct. App. Div. 2002) (internal citation and quotation marks omitted). In this case, Bellator was the drafting party, and as such, any attempt to strain the language to create an ambiguity must be construed against Bellator and in favor of Alvarez. In light of the foregoing, Alvarez makes a prima facie case that he is likely to prevail on the merits of his declaratory judgment claim.

### B. Alvarez Will Suffer Irreparable Harm if He is Unable to Fight for Zuffa During the Pendency of this Litigation

Irreparable harm is that "potential harm which cannot be redressed by a legal or equitable remedy following a trial." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). Alvarez is a professional athlete with a limited period of time or "prime" in which he can perform at a highly competitive level in his profession. Every fight opportunity that passes constitutes irreparable harm. As a result of this dispute, Alvarez has already lost out

on valuable and unique opportunities offered by Zuffa, and he will continue to lose out on additional opportunities if not granted the injunctive relief sought, as Zuffa will not contract with Alvarez absent court approval. See Zuffa's January 10, 2013 letter to Alvarez, through his counsel, attached as Exhibit C to the Counterclaim.

In Jackson v. National Football League, 802 F. Supp. 226, 230-231 (D. Minn. 1992), where the court ruled on an application for temporary and preliminary restraints filed by certain professional football players challenging the NFL's "Plan B" restrictions, the court found that the players satisfied their burden of showing irreparable harm. Among other reasons, the court found "many of the economic injuries alleged by the players, such as their inability to play for teams that may better utilize their skills, and thus maximize their value, their inability to switch to teams that would allow them to start or that play on natural grass (which may prolong a player's career), may be impossible to quantify in monetary terms." Id. at 231. The court also found that "[t]he existence of irreparable injury is underscored by the undisputed brevity and precariousness of the players' careers in professional sports, particularly in the NFL." Ibid.

In Linseman v. World Hockey Ass'n, 439 F. Supp 1315, 1319 (D. Conn 1979), the court, in granting preliminary restraints to a hockey player prohibited by the defendant's age restriction rules from signing with a professional team in defendant's league, similarly found that "the career of a professional athlete is more limited than that of persons engaged in almost any other occupation. Consequently, the loss of even one year of playing time is very detrimental." Notably, and similar to the situation at bar, the court wrote:

> That Linseman would be able to continue playing hockey with the Kingston Canadians for the current season does not reduce the impact of this injury. That team competes in an "amateur" [but paid] league, whereas the Birmingham Club is in competition with professionals. The nature of Linseman's occupation is such that it requires constant practice against the very best competition

> possible in order to fines hone his hockey skills. The difference between the league in which the Kingston Canadians plays and that in which the Bulls compete is such that **it is a difference in kind rather than one in degree**. By playing in the WHA, Linseman may achieve the status of a "superstar" which would bring him **financial and emotional rewards in excess of his salary from the Bulls**. Such rewards are not available to members of the Kingston Canadians, for the simple reason that the league in which the team competes **does not receive the same notoriety and public exposure** as do teams in the WHA. Whether and to what extent Linseman would receive **compensation in addition to that provided in his contract would be impossible to determine** if he were presently denied the opportunity to test his skills against those of other professionals.

[Ibid. (emphasis added) (footnote omitted)]

Similarly, during the pendency of this litigation, Alvarez continues to lose the opportunity to compete against the highest level of MMA fighters in the UFC, a loss that cannot be measured. See also Denver Rockets v. All-Pro Management, Inc., 324 F. Supp. 1049, 1057 (C.D. Cal. 1971) (recognizing a professional basketball player's "very limited career" in granting injunction against enforcement of NBA rule requiring players to be four years out of high school). It is manifest that Alvarez will lose the notoriety and public exposure attendant to competing in these bouts.

Furthermore, Bellator recognized Alvarez's unique and special talents in Bellator's initial contract with Alvarez. Section 20 of that contract, entitled "UNIQUE SERVICES", provides:

> FIGHTER [Alvarez] acknowledges and agrees that the services to be rendered or furnished by FIGHTER are of **special, unique, unusual and extraordinary in character**, giving them peculiar value which **cannot be reasonably or adequately compensated by damages** in an action at law and could cause PROMOTER [Bellator] irreparable damage and injury and agrees that **injunctive relief is appropriate in the event of a breach**, and further, agrees that he will not raise a claim that money damages would suffice as a defense to injunctive relief. To the extent that a bond is necessary to obtain an injunction, FIGHTER agrees that the bond shall not exceed Five Hundred Dollars ($500).

[(emphasis added)].

In light of the personal, specific and unique nature of Alvarez's professional and the Zuffa bouts in which he may participate, any loss of time and opportunities constitute irreparable harm to Alvarez and his professional MMA career.

### C. Granting Alvarez Preliminary Relief Will Not Result in Even Greater Harm to Bellator

Bellator will continue to operate with or without Alvarez. In fact, during the pendency of this action and perhaps thereafter, Alvarez will not be fighting for Bellator, and he may never fight again for Bellator.[2] Alvarez, however, will be harmed significantly more if he is not permitted to earn his living during the pendency of this litigation. There even exists the possibility that Alvarez performs successfully for Zuffa, but that Bellator prevails in the litigation and obtains the then more valuable and exclusive, though limited-in-duration, right to re-sign Alvarez pursuant to the terms of the Bellator Contract. To the extent the Court imposes a bonding requirement on Alvarez pending the resolution of this litigation, it is worth noting that the Bellator Contract, drafted by Bellator, sought to limit any required injunction bond to $500. See Exhibit A to Counterclaim, at Section 20 (quoted above). As such, Alvarez would respectfully request that any required bonding obligation be limited to $500.

---

[2] Pursuant to Section 18(B) of the Bellator Contract, Bellator's right to match expires after one year. As such, Alvarez could have simply elected not to fight for Bellator during this one year period, and even if Bellator had matched the Zuffa Offer, he could not be ordered to specifically perform. See Gov't Guarantee Fund of Republic of Finland v. Hyatt Corp., 95 F.3d 291, 303 (3d Cir. 1996) (stating that an order of specific performance for a personal services contract would "run contrary to the Thirteenth Amendment's prohibition against involuntary servitude." (internal citation and quotation marks omitted)).

### D. The Public Interest Favors Granting Alvarez Preliminary Injunctive Relief

"As a practical matter, if a [party] demonstrates both a likelihood of success and irreparable injury, it almost always will be the case that the public interest will favor [that party]." Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 n.8 (3d Cir. 1994). It is in the public interest to allow an individual to engage in his or her chosen profession. Without this injunctive relief, Alvarez will be sidelined from competing in bouts during the prime of his career. Moreover, as Alvarez is engaged in a popular professional sport, the public would benefit from being able to watch Alvarez perform. Alvarez has shown a likelihood of success on the merits and, therefore, Bellator should not be permitted to keep Alvarez from fighting pending the outcome of this litigation.

### CONCLUSION

For all the foregoing reasons and authorities, defendant/counterclaimant Eddie Alvarez respectfully requests an order preliminarily restraining Bellator from interfering in any way with Alvarez's rights to execute the Zuffa Offer and otherwise interfering with Alvarez's ongoing relationship with Zuffa.

Respectfully submitted,

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
Attorneys for Defendant/Counterclaimant,
Eddie Alvarez

By: _____
Steven R. Klein
Adam J. Sklar

DATED: January 15, 2013