# EXHIBIT

# A

## PROMOTIONAL AGREEMENT

This Promotional Agreement ("Agreement") is made and entered into by and between **BELLATOR SPORT WORLDWIDE, LLC**, a Delaware Limited Liability Company with offices at 935 North Kenter Avenue, Suite 100, Los Angeles, California 90049 ("PROMOTER") and Eddie Alvarez ("FIGHTER").

## RECITALS

**WHEREAS PROMOTER** is in the business, inter alia, of promoting Mixed Martial Arts ("MMA") events and desires to enter into an agreement with FIGHTER to be the exclusive Promoter of FIGHTER's future bouts on the terms set forth herein.

**WHEREAS FIGHTER** is a professional MMA fighter, fighting as a Lightweight with a maximum weight of one hundred fifty five pounds (155lbs), who desires to enter into this AGREEMENT with PROMOTER for PROMOTER to be FIGHTER's exclusive promoter and is willing to grant the ancillary rights herein.

**THEREFORE**, in consideration of the foregoing, the agreements and mutual promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    **INCORPORATION OF RECITALS**

The recitals set forth above are incorporated herein by this reference.

2.    **GRANT OF PROMOTIONAL RIGHTS**

Subject to the terms and conditions set forth below, FIGHTER hereby grants to PROMOTER the exclusive unrestricted worldwide rights to secure, promote, arrange, present, coordinate, create and produce all MMA, martial arts, and unarmed combatant contests

1

(individually, a "Bout" and collectively, the "Bouts") to be engaged in by FIGHTER during the term of this Agreement and any extensions thereof ("Promotional Rights").

3.    **TOURNAMENT COMPENSATION**

A "Tournament" shall be defined as any MMA competition in which multiple fighters compete in a formal, structured series of bouts labeled by PROMOTER as a tournament, to determine a single champion. A Tournament may be structured as a round-robin, single-elimination, double-elimination or any other format chosen by PROMOTER, in PROMOTER's sole and absolute discretion, and may or may not include the seeding, placing or ranking of individual fighters. For Bouts taking place within a Tournament the following purse and bonus structures will be in effect:

   A)    Opening Round of Tournament.

      (i)    Base Purse: Ten Thousand Dollars ($10,000) will be paid to FIGHTER, win or lose.

      (ii)    Bonus payments: An additional Fifteen Thousand Dollars ($15,000) shall be paid to FIGHTER if he is declared the winner of the Bout by the Commission governing his Bout. In such case FIGHTER will receive a total of Twenty Five Thousand Dollars ($25,000) (Ten Thousand Dollars ($10,000) in base purse plus Fifteen Thousand Dollars ($15,000) in bonus).

      (iii)    Advancing to next round: FIGHTER shall advance to the semi final round of the Tournament if he is declared the winner of the Bout by the Commission governing his Bout, is uninjured, is permitted to do so by the Commission having jurisdiction of the semi final bouts of the Tournament, and is otherwise in compliance with the this contract.

2

*B)*   <u>Semi Final Round of Tournament</u>.

(i)   <u>Base Purse</u>:  Twenty Five Thousand Dollars ($25,000) will be paid to the FIGHTER, win or lose.

(ii)   <u>Bonus Payment</u>:  An additional Twenty Five Thousand Dollars ($25,000) shall be paid to FIGHTER if he is declared the winner of the Bout by the Commission governing his Bout.  In such a case FIGHTER will receive a total of Fifty Thousand Dollars ($50,000) (Twenty Five Thousand Dollars ($25,000) in base purse and Twenty Five Thousand Dollars ($25,000) in bonus).

(iii)   <u>Advancing to the next round</u>:  FIGHTER shall advance to the final round of the Tournament if he is declared the winner of the Bout by the Commission governing his Bout, is uninjured, is permitted to do so by the Commission having jurisdiction of the final round of the Tournament, and is otherwise in compliance with this contract.

*C)*   <u>Final Round of Tournament</u>.

(i)   <u>Base Purse</u>:  FIGHTER will be paid a base purse of Forty Thousand Dollars ($40,000), win or lose.

(ii)   <u>Bonus Payment</u>:  FIGHTER will be paid an additional Sixty Thousand Dollars ($60,000) if he is declared the winner of the Bout by the Commission governing his Bout. In such a case FIGHTER will receive a total of One Hundred Thousand Dollars ($100,000) (Forty Thousand Dollars ($40,000) in base purse and Sixty Thousand Dollars ($60,000) in bonus).

(iii)   <u>Championship</u>:  FIGHTER will be declared the Tournament winner in his weight class if he is declared the winner of the Bout by the Commission governing his Bout.

*D)*   <u>Substitutions</u>.

3



It is anticipated, but not guaranteed, that Tournament bouts will be conducted at three(3), four (4), five (5), or six (6) week intervals. Fighters who are defeated in prior rounds may be chosen as substitutes for subsequent rounds if a winning fighter cannot continue in the Tournament. Substitutes will be chosen at the sole discretion of PROMOTER and based on criteria which will be at PROMOTER's sole discretion. FIGHTER is to remain available and on weight so that he can be utilized as a substitute if necessary. If FIGHTER is used as a Tournament substitute his base purse will remain at the base purse for the round in which he lost, but his bonus in the event he wins will be commensurate with that specified above for the round of the Tournament in which he is competing.

4.    **COMPENSATION FOR NON-TOURNAMENT BOUTS**

FIGHTER's compensation in all non-Tournament Bouts will be determined as follows:

A)    <u>Tournament Competitors</u>:  If FIGHTER has participated in a Tournament, his compensation for all non-Tournament Bouts shall be determined as follows:

(i)    If FIGHTER is not the Tournament Champion (i.e., he is not declared the winner of all Tournament Bouts by the Commission or declared Champion by PROMOTER) FIGHTER shall be paid a base purse of Twenty Five Thousand Dollars ($25,000). FIGHTER will be paid an additional Twenty Five Thousand Dollars ($25,000) if he is declared the winner of the Bout by the Commission governing his Bout. In such a case FIGHTER will receive a total of Fifty Thousand Dollars ($50,000) (Twenty Five Thousand Dollars ($25,000) in base purse and Twenty Five Thousand Dollars ($25,000) in bonus). For each non-Tournament Bout that FIGHTER is declared the winner of by the Commission governing such Bout, his compensation for non-Tournament bouts shall increase as follows:  the base purse shall increase by Five Thousand Dollars ($5,000) and the amount of his win bonus shall increase by Five Thousand

4

E+

Dollars ($5,000). Should FIGHTER lose a non-Tournament Bout, his compensation for the next non-Tournament Bout shall remain unchanged.

(ii)    If FIGHTER is the Tournament Champion (i.e., he is declared the winner of all Tournament Bouts by the Commission and is declared Champion by PROMOTER) FIGHTER shall be paid a base purse of Thirty Five Thousand Dollars ($35,000). FIGHTER will be paid an additional Thirty Five Thousand Dollars ($35,000) if he is declared the winner of the Bout by the Commission governing his Bout. In such a case FIGHTER will receive a total of Seventy Thousand Dollars ($70,000) (Thirty Five Thousand Dollars ($35,000) in base purse and Thirty Five Thousand Dollars ($35,000) in bonus). For each non-Tournament Bout that FIGHTER is declared the winner of by the Commission governing such Bout, his compensation for non-Tournament bouts shall increase as follows: the base purse shall increase by Five Thousand Dollars ($5,000) and the amount of his win bonus shall increase by Five Thousand Dollars ($5,000). Should FIGHTER lose a non-Tournament Bout, his compensation for the next non-Tournament Bout shall remain unchanged.

B)    <u>Non-Tournament Competitors</u>:  If FIGHTER has not participated in a Tournament, his compensation for all non-Tournament Bouts shall be determined as follows:

(i)    FIGHTER shall be paid a base purse of Twenty Five Thousand Dollars ($25,000). FIGHTER will be paid an additional Twenty Five Thousand Dollars ($25,000) if he is declared the winner of the Bout by the Commission governing his Bout. In such a case FIGHTER will receive a total of Fifty Thousand Dollars ($50,000) (Twenty Five Thousand Dollars ($25,000) in base purse and Twenty Five Thousand Dollars ($25,000) in bonus). For each non-Tournament Bout that FIGHTER is declared the winner of by the Commission governing such Bout, his compensation for non-Tournament bouts shall increase as follows: the base purse shall increase

5

by Five Thousand Dollars ($5,000) and the amount of his win bonus shall increase by Five Thousand Dollars ($5,000). Should FIGHTER lose a non-Tournament Bout, his compensation for the next non-Tournament Bout shall remain unchanged.

## 5.    **GRANT OF ANCILLARY RIGHTS**

Subject to the terms and conditions set forth below, FIGHTER hereby grants to PROMOTER the exclusive unrestricted worldwide rights to the following ancillary rights ("Ancillary Rights"):

*A)*    The right to stage all Bouts, sell tickets of admission to all Bouts, to broadcast, telecast, photograph, record or otherwise reproduce all Bouts, the events immediately before and after all Bouts and between the rounds and events attendant to Bouts and attendant to any Tournaments in any and all media now known or hereafter devised in or by any manner, method or device (now known or hereafter devised) including, but not limited to, the unlimited and unrestricted rights to telecast all bouts by means of live or closed circuit television, paid, cable, subscription or toll television, films and tapes for exhibition in any and all media and in all gauges, whether the theatrical exhibition or for sale, lease or license for home use, including audio and audiovisual cassettes and discs, and the unlimited right to deal with any or all of the foregoing, and to obtain copyright or similar protection where available in the name of the PROMOTER or PROMOTER's nominee, all in such manner as the PROMOTER in its sole discretion shall determine.

*B)*    The right to exploit and use to the fullest extent possible any and all content data, and information and any and all property rights and intellectual property rights prepared, conceived, developed, manifested in tangible or intangible form, or created by and through this Agreement with FIGHTER as well as any and all other property rights associated with

6

*EH*

PROMOTER, its events or affiliates, which shall include the unrestricted right to fully exploit, use, profit, disseminate, display, reproduce, print, publish, edit, and make any other uses of FIGHTER's names, images, likenesses, sobriquets, voices personas, signatures, biographical materials, photographs and/or any and all information relating thereto ("Identity"), and shall include all persons associated or affiliated with FIGHTER, including FIGHTER's trainers and seconds.

C)    PROMOTER shall be entitled to develop, manufacture, distribute, market and/or sell any and all interactive devices, electronic devices, home video and computer games, arcade video games, hand held versions of video games, video slot machines, CD-ROMS, DVD's, Internet applications, wireless, video and audio cassettes and disks, photographs, books, souvenirs, comics, games, and any and all other similar type products, now known or hereafter to become known, which contain FIGHTER's Identity.  Such use shall include the sleeves, jackets and packaging for such products.

D)    In addition to the rights granted in Subsection C above, PROMOTER may manufacture, distribute or sell any item or good which contains FIGHTER's Identity, including but not be limited to, all souvenir programs, sponsorships, commercial and merchandising tie-ins, advertisements, banners, buttons, posters, clothing, apparel, photographs, toys and any and all other similar type items or goods; provided, however, that all such items or goods must relate to FIGHTER's purpose and relationship with PROMOTER, including but not limited to the promotion of FIGHTER, PROMOTER, PROMOTER's brand, Tournaments, bouts, events, Bouts, pre-bout events, and/or post-bout events.

E)    The right to assign, lease, license, sublease, transfer, use or otherwise dispose of any and all of the rights granted herein and the results of the exercise thereof, and to authorize,

7



license and grant the right to exercise any or all of the foregoing rights to any person, firm or corporation.

*F)*     The right to do all things necessary for the full and complete use, exploitation and exercise of the rights granted herein, including the right to promote and exploit all rights granted hereunder and the results of the exercise thereof, and the right to negotiate, enter into and perform any and all agreements relating to the rights granted herein for the proper production and promotion of radio and television advertisements, publicity, broadcasts relating to PROMOTER, the Bouts, the pre-Bout events, and/or the post-Bout events.

*G)*     The right to all rights, title and interest in and to any and all recordings, including but not limited to, television, radio, Internet, wireless and motion picture films, and the video and audio cassettes of, or based upon PROMOTER's brand, the Bouts, the pre-Bout events and post-Bout events, and the right secure in PROMOTER's name (or that of its nominee) copyright and other protection to the fullest extent available.

*H)*     The non-exclusive right, provided Fighter possesses such right or can reasonably obtain such right, to use the recording, video or audio clip of any prior bout content of FIGHTER, including a bout held by another promoter, for the purpose of publicizing a Bout, which clip shall be provided to PROMOTER upon request.

*I)*     The right to register FIGHTER as one or more domain names for use on the World Wide Web and the right to utilize and own such domain names during the Term and without restriction, in whatever way PROMOTER selects.  Notwithstanding the foregoing, PROMOTER is under no obligation to register FIGHTER or to in any way use such domain names.

*J)*     The right to register as a trademark with the United States Patent and Trademark Office ("USPTO") FIGHTER's name, stage name, Identity, or any other feature of FIGHTER

8

which may be trademarked, for the purposes of (1) promoting sporting events and athletic competitions; (2) broadcasting sports and entertainment programs by means of television, radio, cable television, satellite and other wire and wireless forms of transmission; (3) producing and distributing sports and entertainment programs by means of television, cable television, satellite, via a global information network, pay-per-view exhibition, closed circuit exhibition, and in other live formats; and production of electronic reproductions featuring sports and entertainment programs; (4) merchandise tie-ins and souvenir items; (5) exploitation of all other rights granted to PROMOTER herein.

K)    The right to all event income, revenue or fees which shall include, but are not limited to, venue fees, live event gate receipts, event fees, event income, advertising fees, and sponsorship fees. The right to exploit all forms of radio, television, and electronic media, which may be live, in real time, or delayed transmission and shown displayed via interactive means, in home or theater, pay-per-view, satellite, closed circuit, cable, subscription, antenna, internet, or any other means of transferring such information or data, as well as via telephone, wireless means, cellular phones, computer, CDs, CDROM, DVD, any and all internet applications, film, and tape for exhibition in any and all media formats and the right to all income, fees or revenue generated therefrom.

6.    **PROMOTION OF BOUTS**

A)    Each Bout shall be a MMA contest between FIGHTER and an opponent designated by PROMOTER. FIGHTER shall abide by all rules set forth by PROMOTER with regards to any MMA Bout provided such rules are not inconsistent with the rules and regulations of the athletic commission or regulatory body having jurisdiction over the Bout ("Commission"). FIGHTER and PROMOTER shall comply with and be bound by the rules and regulations of the Commission.

9

*B)*    PROMOTER shall promote and FIGHTER shall participate in the minimum number of Bouts set forth in the Term section below. It is contemplated that the first series of bouts in which FIGHTER shall engage will be in a multi-stage Tournament leading to a championship, however PROMOTER may secure, promote, arrange, present, coordinate, create and produce Bouts in any manner PROMOTER chooses, including the use of Tournament formats, individual bouts, or any other structure PROMOTER desires.

*C)*    PROMOTER shall be deemed to have complied with its obligations to promote any Bout if PROMOTER shall have made an offer to FIGHTER to promote a Bout in accordance with the provisions hereof and FIGHTER shall have refused to participate. If a Bout is canceled or postponed for any reason, the failure of such Bout to take place shall not be deemed non-performance by PROMOTER and PROMOTER shall not be liable for any FIGHTER's purse associated therewith.

*D)*    All Bouts shall be on dates and at sites to be designated by PROMOTER, in its sole and absolute discretion. If any Bout is postponed for any reason the Bout agreement applicable to such bout shall determine the rights of the parties and in addition thereto, the Term shall be extended, at PROMOTER's election, by a number of days equal to the number of days between the date originally scheduled for the Bout and the date on which the Bout occurs.

*E)*    During the Term, PROMOTER shall have the exclusive right to promote all of FIGHTER's bouts and Fighter shall not participate in or render his services as a professional fighter or in any other capacity to any MMA, boxing, martial art, professional wrestling, or any other fighter competition or exhibition, except as otherwise expressly permitted by PROMOTER.

10

## 7.    FIGHTER'S COOPERATION

FIGHTER shall cooperate and assist in the advertising, publicity, and promotion of (i) the Bouts and/or Tournaments, (ii) any and all rebroadcast of the Bouts and/or Tournaments in any media whatsoever, (iii) other bouts of PROMOTER, (iv) other events and broadcasts by PROMOTER, and (v) the sale of merchandise; and (vi) any other exploitation by PROMOTER resulting from the grant of Promotional Rights and Ancillary Rights. FIGHTER's cooperation and assistance shall include but not be limited to making appearances at such reasonable number of press conferences, interviews, appearances, and other sponsorship and promotional activities (any of which may be telecast, broadcast, recorded and/or filmed) as PROMOTER may designate, without additional compensation therefore. In addition, FIGHTER shall fully cooperate with any and all requests made by any of PROMOTER's television and cable network partners with respect to any assistance, press conferences, interviews, appearances or other activities they may request in order to promote FIGHTER, a Bout, the Bouts, PROMOTER, PROMOTER's brand, or any other bout or series of bouts. For such promotional activities, PROMOTER will arrange and pay for FIGHTER's reasonable travel and hotel accommodations and per diem for FIGHTER.

## 8.    TERM

*A)*    The duration of the Promotional Rights ("Term") shall commence on the "Effective Date" as defined herein and end on the earlier of (i) thirty (30) months after the Effective Date, or (ii) the date on which FIGHTER has participated in at least six (6) Bouts promoted by PROMOTER under this Agreement ("Termination Date"), unless terminated sooner or extended further pursuant to the provisions of this Agreement.

*B)*    If, at any time during the Term, FIGHTER is declared the champion of his weight class, a Tournament winner, or a Tournament runner-up, the Term shall be automatically extended

11

for a period commencing on the Termination Date and ending on the earlier of (i) eighteen (18) months from the Termination Date, or (ii) the date in which FIGHTER has participated in three (3) bouts promoted by PROMOTER following the Termination Date ("Extension Term"). Any reference to the Term herein shall be deemed to include a reference to the Extension Term, where applicable.

C)    The expiration of the Term shall not affect or terminate the grant of Ancillary Rights or any of the general or specific provisions of this Agreement which shall survive any such expiration or termination.

D)    PROMOTER shall not be deemed in default of this Agreement to the extent that performance of its obligations are delayed or prevented by reason of any act of God, fire, natural disaster, war, riots, strike or labor difficulties, terrorism, power failure or other acts constituting force majeure or any governmental or Commission enactment, determination or action, regulation or order.

E)    The termination of this Agreement or the expiration of the Term shall not serve to affect or terminate the Ancillary Rights granted under this Agreement, as they shall survive any such termination, expiration or acceleration and this Agreement shall remain in full force and effect with respect thereto.

9.    **INJURY, DISABILITY, POSTPONEMENT OR RETIREMENT**

A)    Should any Bout be postponed due to injury, disability, illness, retirement, incarceration, loss of travel, suspension by a Commission, positive drug test, unwillingness to compete, or any other similar reason, of either FIGHTER or FIGHTER's opponent, the obligation of PROMOTER relating to the minimum bouts, timing of the bouts, and the Term of this

12

Agreement shall automatically be extended by the period of time necessary to reschedule the postponed Bout.

*B)*    The respective lengths of time to provide FIGHTER with the minimum number of Bouts shall be extended, (i) that period of time that FIGHTER is unable or unwilling to compete, or (ii) for a period of six (6) months, whichever is longer. Such extension shall include without limitation, any time periods when FIGHTER is disabled, sick or injured for any reason, incarcerated, suspended or revoked by a Commission, has his ability to travel restricted by a recognized governmental agency or is otherwise unable, unwilling or refuses to compete or train for a Bout for any reason whatsoever.

(i)    PROMOTER and FIGHTER understand and agree that provided FIGHTER is not injured, disabled, retired, incarcerated, suspended by the commission, tested positive for drugs, or was/is unwilling to compete and/or accept Bouts offered to FIGHTER by PROMOTER, then PROMOTER shall be obligated to provide FIGHTER the opportunity to participate in Bouts under this Agreement at "least" as frequently as once every six (6) months, or FIGHTER shall have the right, but not the obligation to terminate this Agreement.

*C)*    If at any time during the Term, FIGHTER decides to retire, PROMOTER may, at its election, suspend the Term for the period of such retirement.

*D)*    If any Bout cannot be held as scheduled or conducted in the manner intended for any reason whatsoever, including the withdrawal of an opponent, cancellation of the main event or cancellation of a telecast (but not including reasons relating to FIGHTER's inability or unwillingness to compete), PROMOTER may, in its sole discretion, (i) substitute another opponent, (ii) cancel the Bout or (iii) reschedule the Bout. In the event PROMOTER cancels or reschedules the Bout, PROMOTER shall have no obligation or liability to FIGHTER whatsoever

13

in connection therewith, including any obligation to pay fight purses, and the respective lengths of time to provide FIGHTER with the minimum number of Bouts shall be extended by the period of time necessary to reschedule the Bout.

E)    In the event that any Bout is postponed or cannot be held due to the actions of FIGHTER, in addition to any other rights that PROMOTER may have, PROMOTER may extend the Term of this Agreement and any provision thereof by, (i) the period of any delay caused by FIGHTER or (ii) for a period of six (6) months, whichever is greater.

F)    In the event that FIGHTER breaches any term of this Agreement, or provides any false representation or warranty, PROMOTER may extend the Term of this Agreement and any provision thereof by, (i) the period of time necessary to correct or cure any breach or inaccuracy of any warranty or (ii) for a period of six (6) months, whichever is greater.

10.    **NOTIFICATION OF IMPAIRMENT/INJURY**

In the event that FIGHTER suffers any injury or impairment of any nature which could prevent him from engaging in a bout or which could impact negatively on his ability to be licensed he will notify PROMOTER immediately in writing.  FIGHTER agrees to remain in competitive condition during the Term of this Agreement.

11.    **FORM BOUT CONTRACT**

For each Bout hereunder FIGHTER shall execute and comply with a standard form of Commission bout agreement whenever and wherever required.  In the event there is any inconsistency between the terms and conditions contained herein and such bout agreement, the provisions contained herein shall supersede and prevail to the extent permitted by law.

14

12.    **TRANSPORTATION, ROOM, BOARD**

For each bout hereunder, PROMOTER shall provide, at PROMOTER's cost, Three (3) round trip coach class air transportation tickets from cities in the U.S. to the site of the bout as well as Two (2) hotel rooms and meals for up to Three (3) persons and training facilities at such sites for up to four (4) days prior to each bout. If during the Term, FIGHTER has to travel Internationally to fulfill his obligations under the Agreement, then PROMOTER agrees to provide, at PROMOTER's cost, Two (2) round trip coach air transportation tickets and One (1) Business class air transportation ticket from cities in the US to the International site of the bout as well as Two (2) hotel rooms and meals for up to Three (3) persons. Once departure dates, times and locations are set with reasonable consultation with FIGHTER, any deviation by FIGHTER will be at his expense.

13.    **MERCHANDISING RIGHTS**

FIGHTER agrees that he will negotiate with PROMOTER in a good faith, if and when PROMOTER creates a licensed merchandise program ("Merchandise Program"). The Merchandise Program will be created to help FIGHTER exploit commercial opportunities. Such a program will be separate from, and in addition to, any of the merchandise rights already granted to PROMOTER herein, and therefore will not include any products created, used or sold, (i) in connection with the promotion of FIGHTER, PROMOTER, PROMOTER's brand, any Tournaments, any Bouts, pre-Bout events, or post-Bout events, or (ii) under the Promotional Rights and/or Ancillary Rights, including but not limited to items such as interactive devices, electronic devices, home video and computer games, arcade video games, hand held versions of video games, video slot machines, CD-ROMS, DVD's, Internet applications, wireless, video and

15

*E A*

audio cassettes and disks, photographs, books, comics, games, and any and all other similar type products.

### 14.   FIGHTER'S REPRESENTATIONS AND WARRANTIES

FIGHTER represents, warrants and agrees that:

*A)*   FIGHTER shall conduct himself in accordance with commonly accepted standards of decency, social conventions and morals, and FIGHTER will not commit any act or become involved in any situation or occurrence or make any statement which will reflect negatively upon or bring disrepute, contempt, scandal, ridicule, or disdain to FIGHTER, PROMOTER, or any of PROMOTER's officers, managers, members, employees, or agents.

*B)*   FIGHTER's conduct shall not be such a shock, insult or offend the public or any organized group therein, or reflect unfavorably upon any current or proposed sponsor or such sponsor's advertising agency, or any network or station over which a Bout is to be broadcast.

*C)*   FIGHTER shall not authorize or be involved with any advertising material or publicity materials that contain language or material which is generally considered to be obscene, libelous, slanderous or defamatory.

*D)*   FIGHTER shall compete in each Bout to the best of FIGHTER's ability.

*E)*   FIGHTER is free to enter into this Agreement and has not heretofore entered into and will not during the term hereof enter into any contract, option, agreement or understanding, whether oral or written, which might interfere with the provisions hereof or the grant of rights contained herein or which would or could interfere with the full and complete performance by FIGHTER of obligations hereunder or the free and unimpaired exercise by PROMOTER of the rights herein granted to it.

16

F)    FIGHTER has no outstanding promotional contracts or claims of promotional obligations.

G)    There are no claims, arbitrations, mediations or litigations pending or threatened affecting FIGHTER which or might interfere with the full and complete exercise or enjoyment by PROMOTER of any rights granted hereunder;

H)    FIGHTER is in good physical and mental health and will do nothing to potentially impair his health including the use of any illegal, prohibited, controlled or banned substances. FIGHTER shall be deemed in violation of this Agreement if FIGHTER tests positive, as defined by the Commission regulating any Bout, for any illegal, prohibited, controlled or banned substance as part of a pre-Bout or post-Bout test.

I)    FIGHTER will not engage in any abnormally dangerous activity and will not engage in any illegal activity or activity which would reasonably be anticipated to bring either FIGHTER or PROMOTER into disrepute.

J)    FIGHTER will not engage in any combat sports without the express approval of PROMOTER, including any and all martial arts, boxing, kickboxing, wrestling, or MMA (except as necessary for training activities).

K)    FIGHTER shall be solely responsible for obtaining all necessary documentation, including any work visas. FIGHTER shall also comply with any applicable Commission rule, regulation or enactment and shall maintain, at his sole expense, any licenses required to participate in any Bout.

L)    FIGHTER is entering into this Agreement of his own free will and is not subject to duress of any kind, and is not under the influence of any substance of any kind.

17

M)    FIGHTER has had the opportunity to consult with an attorney and FIGHTER appreciates the legal significance and consequences of signing this Agreement.

N)    FIGHTER is a citizen of the United States and is not otherwise subject to any backup or withholding taxes or has provided PROMOTER with all necessary information to enable PROMOTER to comply with any applicable withholding or tax payment.

O)    Prior to participating in a Bout, FIGHTER will obtain all rights necessary to use the apparel, sportswear and/or equipment displayed by FIGHTER or any of FIGHTER's trainers or seconds during such Bout, pre-Bout events, or post-Bout events.

P)    FIGHTER will not utilize any of PROMOTER's intellectual property rights, including, but not limited to, the names and marks of PROMOTER, and any logos, pictures or other representations of PROMOTER's intellectual property.  Without limiting the scope of this prohibition, FIGHTER expressly agrees to not use any championship belt of PROMOTER without the prior written consent of PROMOTER, and further agrees that any such belt he obtains is on loan and will at all times remain the property of PROMOTER.  Upon request, the belt must be returned to PROMOTER within three (3) days.

Q)    FIGHTER will remain in good physical shape and within the designated weight class FIGHTER competed in when FIGHTER first entered into this Agreement, unless otherwise agreed to in writing by PROMOTER.

15.    **INDEMNIFICATION**

FIGHTER hereby agrees to indemnify and hold harmless PROMOTER, any television or cable network, each station broadcasting the Bouts, each sponsor and its advertising agency, and the subsidiaries, affiliates, members, managers, shareholders, directors, officers, employees, representatives, agents, contractors and assigns of each of the foregoing, from and against any and

18

all liability, loss, claims, suits, charges, actions, proceedings, damages and expenses (including reasonable attorneys' fees) arising from: (i) use of any materials, information or services furnished by FIGHTER, (ii) any acts or words spoken by FIGHTER in connection with the production, rehearsal, exhibition, broadcast or other use of the Bouts and the rights granted to PROMOTER hereunder, or (iii) any breach or alleged breach of any promise, representation, warranty or agreement made by FIGHTER in this Agreement.

### 16.  ADVERTISING/SPONSORSHIPS

*A)*    FIGHTER agrees that no wording, symbol, picture, design, name or other advertising or informational material shall appear on his person, or upon trunks, robe, shoes, or other clothing worn by FIGHTER, his trainers, seconds or assistants during any Bout hereunder, without prior written approval of PROMOTER.

*B)*    Without limitation of the above, FIGHTER shall not display any wording, symbol, picture, design, name or other advertising or informational material on FIGHTER's person, trunks, robe, shoes, or other clothing worn by FIGHTER, his trainers, seconds or assistants during any Bout hereunder or at any activity sponsored by PROMOTER which; (i) is in conflict or competition with PROMOTER or any of PROMOTER's sponsors, (ii) is in conflict or competition with the requirements of any telecaster, (iii) represents any beer, alcohol, beverage, tobacco, casino, gaming or media company, (iv) may cause injury to the reputation of PROMOTER or its sponsors, or (v) is considered by PROMOTER, in its sole discretion, to be in bad taste.

*C)*    FIGHTER shall provide one (1) pair of dark colored trunks and one (1) pair of light colored trunks for each Bout so that fighters may be clearly distinguishable from one another during bouts.

19

17.    **BREACH, TERMINATION AND OTHER REMEDIES**

*A)*    PROMOTER shall have the right, upon notice to FIGHTER, to accelerate the Term and thereby terminate this Agreement, if:

(i)    FIGHTER fails or refuses, for any reason other than injury or physical disability, to engage in a Bout offered by PROMOTER.

(ii)    FIGHTER breaches, violates or is in default of any provision in this Agreement or any other agreement entered hereafter between FIGHTER and PROMOTER.

(iii)    FIGHTER's representations and/or warranties contained herein are false.

(iv)    FIGHTER is declared the loser of any Bout (whether promoted by PROMOTER or not) by the Commission having official jurisdiction over the Bout.

(v)    FIGHTER's license to participate in the Bouts is suspended or revoked by any Commission.

*B)*    The effective date of termination shall be the day such notice is sent to FIGHTER.

*C)*    Upon termination, all of PROMOTER's obligations to FIGHTER shall immediately cease, except that PROMOTER shall owe amounts due for Bouts that have been completed prior to termination.    PROMOTER shall be allowed to terminate FIGHTER's participation in any scheduled Bout and PROMOTER may withdraw recognition from FIGHTER of any championship status.

*D)*    Acceleration and termination of this Agreement shall not serve to affect or terminate any of the Ancillary Rights granted herein, and this Agreement shall survive any termination and remain in full force and effect with respect thereto.

*E)*    In the event PROMOTER fails to make to FIGHTER any payment required under this Agreement, FIGHTER shall serve written notice upon PROMOTER and PROMOTER shall

20

have a period of fourteen (14) business days after its receipt of such written notice to cure. In the event that PROMOTER cures within fourteen (14) business days, this Agreement shall remain in full force and effect. If PROMOTER fails to cure within fourteen (14) business days, FIGHTER shall have the option to terminate this Agreement by so notifying PROMOTER in writing at the conclusion of the fourteen (14) business day cure period.

F)    In the event that at any point during the Term of FIGHTER's Agreement with PROMOTER, PROMOTER shall file for Bankruptcy, then FIGHTER shall have the immediate right to terminate the Agreement with PROMOTER with no further obligation to PROMOTER.

G)    In the event that FIGHTER believes in good faith that PROMOTER has breached this Agreement other than as set forth above, PROMOTER shall have a period of forty-five (45) days after receipt of written notice of such breach from FIGHTER in which to cure such breach. In the event that PROMOTER cures its breach within the forty-five (45) day period, this Agreement shall remain in full force and effect. If PROMOTER fails to cure such breach within the forty-five (45) day period, then FIGHTER shall have the option to terminate this Agreement, by so notifying in writing PROMOTER, at the conclusion of the forty-five (45) day cure period.

H)    In the Event that FIGHTER breaches this agreement, PROMOTER reserves all rights and all remedies.

18.    **FIRST/LAST REFUSAL**

A)    Upon expiration of the Term, FIGHTER agrees to negotiate exclusively and in good faith with PROMOTER regarding the extension or renewal of the Term for a period of ninety (90) days following the expiration of the Term.

B)    In the event no such agreement is reached between FIGHTER and PROMOTER during the aforementioned ninety (90) day period, FIGHTER may negotiate with other

21

*EH*

promotional entities, subject to PROMOTER's right to match the terms of any agreement offered to FIGHTER by such other promotional entity. PROMOTER's right to match shall begin at the end of the ninety (90) day period and last for one (1) year.

C) FIGHTER shall provide PROMOTER with prompt written notice of any such offer, containing full details in regards thereof. Such notice shall constitute an exclusive, irrevocable offer to contract with PROMOTER on the same terms and conditions. PROMOTER shall have fourteen (14) business days after receipt of said notice to either accept or reject said offer. If PROMOTER rejects said offer, FIGHTER may accept said offer with the promotional entity on the same terms and conditions and without any modifications thereto. If the offer is modified in any material way, such modification shall give rise to another option for PROMOTER to match the terms of the offer as modified.

D) PROMOTER's failure to accept any offer shall not constitute a waiver of last refusal with respect to subsequent offers.

19. **MEDICAL TESTING**

Upon signing this contract and as required before any bout FIGHTER shall complete a full physical medical examination and undergo testing and receive affirmative clearance there from upon execution of this contract and prior to each bout including, but not limited to the following: CBC, Hepatitis B, Hepatitis C, HIV, RH and Blood Type, RPR, PT, PTT, Urinalysis with drug screening, EKG, CT Scan, MRI, Dialated Ophthalmological exam, and such other testing as PROMOTER or the applicable Commission may require. The medical examination shall be performed by a neutral medical service provider during the thirty (30) day period immediately preceding the date of each bout. The report of the medical examination of FIGHTER containing the results of the examination and tests shall be delivered to PROMOTER no less than Fourteen

22

*EH*

(14) day prior to any bout and must not contain any restrictions on FIGHTER's ability to compete. All costs associated with the medical examination and tests shall be paid by FIGHTER.

### 20. UNIQUE SERVICES

FIGHTER acknowledges and agrees that the services to be rendered or furnished by FIGHTER are of special, unique, unusual and extraordinary in character, giving them peculiar value which cannot be reasonably or adequately compensated by damages in action at law and could cause PROMOTER irreparable damage and injury and agrees that injunctive relief is appropriate in the event of a breach, and further, agrees that he will not raise a claim that money damages would suffice as a defense to injunctive relief. To the extent that a bond is necessary to obtain an injunction, FIGHTER agrees that the bond shall not exceed Five Hundred Dollars ($500).

### 21. ASSIGNMENT

PROMOTER may assign, license, or transfer any rights or all of the rights and/or obligations contained in the Agreement, including but not limited to the right to allow other persons or entities to promote the Bouts; provided, however, that any such assignment will not relieve PROMOTER from the responsibility assumed by it under this Agreement. The rights and obligations of FIGHTER arising from this Agreement are personal to FIGHTER and may not be assigned, licensed, pledged or transferred for any reason.

### 22. NON-EXCLUSIVITY

Nothing herein shall prevent PROMOTER from engaging in promotion activities for any other FIGHTER, including those fighters in the same weight class.

23

EA

**23.   RELATIONSHIP OF PARTIES**

Nothing in this Agreement shall be construed to constitute FIGHTER as an employee of PROMOTER or to appoint PROMOTER as FIGHTER's agent, and PROMOTER shall have no financial interest in the compensation payable to the FIGHTER for engaging in any bout hereunder. It is intended that FIGHTER shall remain an independent contractor, responsible for his own actions and expenses, including trainers, managers, attorneys and professional membership, and sanctioning fees, if any.

**24.   CHOICE OF LAW/VENUE**

The law of the State of New Jersey applicable to contracts executed and to be fully performed in the State of New Jersey shall govern this Agreement, and FIGHTER's execution of this Agreement shall constitute his consent to the exclusive jurisdiction of the Courts of the State of New Jersey and the United States Courts located in New Jersey and to serve all process pursuant to the applicable section of the New Jersey Court Rules and/or Statutes with respect to matters relating to this Agreement or any dispute between the parties; provided, however, that actual Bouts will be conducted under the rules of the Commission in whose jurisdiction the Bout is to take place.

**25.   NOTICE** .

A)      All written notices permitted or required under this Agreement, elections, payments or other communications to be sent to the parties hereto shall be addressed and sent by certified or registered mail return receipt requested, postage prepaid, by confirmed facsimile or by email as follows:

TO:   **PROMOTER**:
Bellator Sport Worldwide, LLC
935 North Kenter Avenue

**With a Copy to**:
Patrick C. English, Esq.
Dines and English, L.L.C.



24

Suite 100
Los Angeles, California 90049
**Telecopier:** (312) 245-9807
Email: bjorn@bellatorfc.com

685 Van Houten Avenue
Clifton, New Jersey 07013
**Telecopier:** (973) 778-7633
Email: dinesandenglish@aol.com

TO:   **FIGHTER:**

   Ed Alvarez

   _____

   Philadelphia, PA 19124

*B)*   Notice will be deemed given as of the successful sending of the facsimile or email, or upon receipt by the receiving party of the mailing. It is the duty and responsibility of each party to notify the other parties to this Agreement of any address changes for purposes of notice and service.

26.   <u>**FURTHER ASSURANCES**</u>

*A)*   FIGHTER shall execute any and all additional documents or instruments necessary or desirable to effectuate the provisions of this Agreement. FIGHTER shall not take any action or fail to take any action which action or failure shall frustrate the purposes of this Agreement and the benefits contemplated hereby.

*B)*   FIGHTER hereby acknowledges that PROMOTER may enter into a single bout, multi-bout, and/or multi-year contracts with a Telecaster or Telecasters in reliance on this contract, agrees to same, and agrees to execute any necessary contracts or ratifications to facilitate same so long as those contracts or ratifications are not inconsistent with his Agreement.

*C)*   FIGHTER agrees to cooperate in any reasonable manner to allow PROMOTER to acquire, for its own account, non-appearance or other insurance, in the sole discretion of

25

EA

PROMOTER. This includes, but is not limited to, submitting to a medical examination at PROMOTER's cost.

### 27. PUBLIC OFFERINGS/BUSINESS ARRANGEMENTS

It is expressly understood that nothing in this contract shall prohibit any public or private offering by PROMOTER, any joint venture entered into by PROMOTER, or any syndication sponsored by PROMOTER, any change of ownership or control of PROMOTER, or any other business arrangement entered into by PROMOTER unless expressly prohibited herein.

### 28. DESCRIPTIVE HEADINGS

Descriptive headings of several of the sections and paragraphs of this Agreement are inserted for convenience only and do not constitute a part of this Agreement.

### 29. ENTIRE AGREEMENT

This Agreement contains the full and complete understanding among the parties hereto and shall supersede all prior representations, agreements and understandings whether written or oral, pertaining hereto. This agreement may be modified only pursuant to a writing signed by both parties. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument. Facsimile signatures shall be as effective as originals.

### 30. CONFIDENTIALITY

FIGHTER shall not disclose any information with respect to the terms of this Agreement or any Bout agreement and they shall remain confidential except, (i) to the extent necessary to comply with law, (ii) to obtain professional advice from his agents (i.e., managers, attorneys, accountants), or (iii) to enforce FIGHTER's rights under this Agreement. If disclosure must be made to conform with any valid governmental requirement, or any subpoena, FIGHTER shall

26

notify the other party at least seven (7) working days before disclosure is to be made and make good faith efforts to cause the party to whom the information is disclosed to keep the information confidential; provided, however, that disclosures necessary to comply with any Commission requirements are pre-approved. FIGHTER acknowledges that disclosure could place PROMOTER at a competitive disadvantage and further acknowledges that disclosure will subject him to causes of action for injunctive relief and/or for damages.

### 31.    ACKNOWLEDGMENT OF RISK

FIGHTER voluntarily and knowingly agrees to participate in the events governed by this Agreement. MMA is a dangerous activity. FIGHTER hereby acknowledges that he may suffer transitory or permanent physical injuries from MMA, either in a single event or from participating in multiple events. FIGHTER hereby releases PROMOTER, sponsors, Commissions, and venues or any agents, representatives or employees thereof, from any and all claims arising from injuries, mental and physical, which may be sustained by FIGHTER during participation in any of the events governed by this Agreement. PROMOTER will acquire such medical insurance for Bouts as is required by the Commissions having jurisdiction over the Bouts, if any is required, and FIGHTER's sole recourse in the event of injury sustained in the course of a bout will be through such insurance.

### 32.    VOLUNTARINESS OF CONTRACT

FIGHTER acknowledges that he has had the opportunity to obtain legal advice, should he so choose, prior to the executing this Agreement, and that his entry into this contract is entirely voluntary.

27

$E^n$

33,    SAVINGS CLAUSE

If any provision of this contract is found to be illegal or void, then the offending contract provision shall be deemed stricken and the remainder of this Agreement will remain in effect.

34.    RIGHTS RETAINED

Any rights not expressly granted to FIGHTER herein are retained by PROMOTER.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the dates set forth below, the later of which shall be the Effective Date of this Agreement.

BELLATOR SPORT WORLDWIDE, LLC       FIGHTER

Signature: _____       Signature: _Ed Alvarez_____

Print: _____       Print: __E2  Alvarez_____

Title: _____       Social Security No:_____

Date: _____       Date: __10-28-08_____

28

_E.A_

## ADDENDUM A – SIGNING BONUS

This Addendum A to the Promotional Agreement ("Addendum A") is made and entered into by and between BELLATOR and FIGHTER and shall be incorporated into the Promotional Agreement on all the terms and conditions set forth herein. All terms and definitions used in the Promotional Agreement shall be incorporated herein.

FIGHTER shall receive a signing bonus of One Hundred Fifty Thousand Dollars ($150,000) (the "Signing Bonus"), payable as follows:

One Hundred Thousand Dollars ($100,000) shall be paid upon the execution of the Promotional Agreement and the remaining Fifty Thousand Dollars ($50,000) shall be paid within ninety (90) days thereafter.

IN WITNESS WHEREOF, the parties have executed this Addendum A as of the dates set forth below.

**BELLATOR SPORT WORLDWIDE, LLC**

Signature: _____

Print: _____

Title: _____

Date: _____

**FIGHTER**

Signature: _Ed Alvarez_____

Print: _Ed Alvarez_____

Social Security No: _____

Date: _10-28-08_____

29

## ADDENDUM B – PAY-PER-VIEW

This Addendum B to the Promotional Agreement ("Addendum B") is made and entered into by and between BELLATOR and FIGHTER and shall be incorporated into the Promotional Agreement on all the terms and conditions set forth herein. All terms and definitions used in the Promotional Agreement shall be incorporated herein.

A)    Regardless of any compensation terms set forth in the Promotional Agreement, in the event FIGHTER meets the criteria below (the "PPV Criteria"), FIGHTER shall be compensated according to this Addendum B.

B)    FIGHTER shall meet the PPV Criteria if FIGHTER meets all of the following conditions:

(i)    FIGHTER must be declared the champion of a Tournament by the PROMOTER.

(ii)    PROMOTER must designate FIGHTER as the main event on a PPV fight card, the designation of which shall be in PROMOTER's sole and absolute discretion.

(iii)    PROMOTER must broadcast FIGHTER's main event Bout via pay-per-view ("PPV"), which shall be defined as a broadly distributed pay-per-view event on iN DEMAND, DirecTV, Echostar or other similar pay-per-view provider as utilized by PROMOTER.

C)    If FIGHTER meets the PPV Criteria, FIGHTER shall be compensated as follows:

(i)    A guaranteed fight purse of Eighty Thousand ($80,000) Dollars,

30

E.A

(ii)    One Dollar ($1.00) for each incremental pay-per-view buy over and above Eighty Thousand (80,000) pay-per-view buys through One Hundred Forty Nine Thousand Nine Hundred Ninety Nine (149,999) pay-per-view buys, and then;

(iii)    Two Dollars ($2.00) for each incremental pay-per-view buy over and above One Hundred Fifty Thousand (150,000) pay-per-view buys.

**IN WITNESS WHEREOF**, the parties have executed this Addendum B as of the dates set forth below.

**BELLATOR SPORT WORLDWIDE, LLC**          **FIGHTER**

Signature: _____          Signature: _Ed Alvarez_

Print: _____          Print: _Ed Alvarez_

Title: _____          Social Security No: _____

Date: _____          Date: _10-28-08_

Promotional Agreement
Bellator Sport Worldwide, LLC

## ADDENDUM C – ADDITIONAL BOUTS

This Addendum C to the Promotional Agreement ("Addendum A") is made and entered into by and between PROMOTER and FIGHTER and shall be incorporated into the Promotional Agreement on all the terms and conditions set forth herein. All terms and definitions used in the Promotional Agreement shall be incorporated herein.

The parties agree and understand that FIGHTER shall be allowed to participate in Three (3) Bouts outside of this Agreement (the "Additional Bouts"), two (2) of the Bouts may take place with the Dream Promotion in Japan and one (1) of the Bouts may occur with the Extreme Challenge Promotion, all of which are subject to the following Terms and Conditions:

A) The opponent for the Two (2) Bouts which may occur with the Dream Promotion shall be subject to Promoters pre-approval rights (which approval must be in writing) and said approval may be withheld by Promoter at Promoters discretion, and

B) The Additional Bout with the Extreme Challenge Promotion must occur no later than January 20, 2009.

C) If Fighter were to be declared the loser of any of the three Additional Bouts, Promoter shall have the right to terminate this Agreement with no further obligation to Fighter.

**IN WITNESS WHEREOF**, the parties have executed this Addendum A as of the dates set forth below.

**BELLATOR SPORT WORLDWIDE, LLC**     **FIGHTER**

Signature: _____     Signature: _Ed Alvarez_

Print: _____     Print: _Ed Alvarez_

32

Title: _____

Date: _____

Social Security No: _____ :

Tax ID for Management Co. Receiving Payment: _____

Date: 10 - 28 - 08 _____

EG

Promotional Agreement
Bellator Sport Worldwide, LLC

# ADDENDUM D – SIGNING BONUS RECOVERY

This Addendum D to the Promotional Agreement ("Addendum C") is made and entered into by and between BELLATOR and FIGHTER and shall be incorporated into the Promotional Agreement on all the terms and conditions set forth herein. All terms and definitions used in the Promotional Agreement shall be incorporated herein.

A)    NO CONFLICTING OBLIGATIONS.    FIGHTER acknowledges that the any signing bonus paid to FIGHTER is based solely on FIGHTER's ability to fulfill the terms of the Promotional Agreement.    Specifically, FIGHTER has represented to BELLATOR that FIGHTER is free to enter into the Promotional Agreement and has not heretofore entered into and will not during the term hereof enter into any contract, option, agreement or understanding, whether oral or written, which might interfere with the provisions hereof or the grant of rights contained herein or which would or could interfere with the full and complete performance by FIGHTER of obligations hereunder or the free and unimpaired exercise by PROMOTER of the rights herein granted to it.

B)    RECOVERY OF SIGNING BONUS.    Should FIGHTER's representation be false, and/or should FIGHTER be obligated to participate in any other fight league or on behalf of any other MMA promoter, BELLATOR shall be entitled to immediately terminate the Promotional Agreement upon written notice and thereafter recover the full amount of any signing bonus paid to FIGHTER. FIGHTER shall be required to refund the full amount of the signing bonus paid within five (5) business days.

C) <u>GARNISH WAGES</u>. In addition to having a personal claim against FIGHTER, BELLATOR shall be permitted to recover the full amount of the signing bonus by garnishing the wages of FIGHTER and/or collecting all of FIGHTER's fight purses and win bonuses. FIGHTER shall cooperate fully with BELLATOR in its efforts to collect such monies, including signing any and all documents with a Commission needed to assist BELLATOR in its collection efforts.

**IN WITNESS WHEREOF**, the parties have executed this Addendum B as of the dates set forth below.

**BELLATOR SPORT WORLDWIDE, LLC**          **FIGHTER**

Signature: _____          Signature: _Ed Alvarez_

Print: _____          Print: _Ed Alvarez_

Title: _____          Social Security No: _____

Date: _____          Date: _10 - 28 - 08_

Promotional Agreement
Bellator Sport Worldwide, LLC