NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BELLATOR SPORT WORLDWIDE, LLC<br><br>Plaintiff,<br><br>v.<br><br>EDDIE ALVAREZ et al.<br><br>Defendants. | Civil Action No.: 13-63 (JLL)<br><br>**OPINION AND ORDER** |

**LINARES,** District Judge.

This matter comes before the Court by way of Plaintiff / Counterclaim Defendant Bellator Sport Worldwide, LLC ("Bellator")'s motion to dismiss Counts 3 and 4 of Defendant / Counterclaim Plaintiff Eddie Alvarez ("Alvarez")'s counterclaim asserting claims for tortious interference with prospective economic advantage and breach of contract, respectively. The Court has considered the submissions made in support of and in opposition to Bellator's motion, and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Bellator's motion is **denied**.

I. BACKGROUND

Alvarez is a professional mixed martial arts fighter. (CC ¶ 1.) On or about October 28, 2008, Alvarez and Bellator entered into a promotion agreement (the "Bellator Contract"). The Bellator Contract's term expired on October 18, 2012. (*See* CC at Ex. A.) The terms of the Bellator Contract required Alvarez "to negotiate exclusively and in good faith" with Bellator "regarding the extension or renewal of the Term [of the Bellator Contract] for a period of ninety (90) days following the expiration of the Term." (*Id.* ¶ 8.) If Alvarez and Bellator failed to reach

1

an agreement within 90 days of the Bellator Contract's expiration, Alvarez could negotiate with other promoters. (*Id.*) However, Bellator retained a right of first refusal, that is, a right "to match the terms of any agreement" Alvarez might reach with a different promoter for a period of one year. (*Id.*)

By letter agreement dated November 1, 2012, Bellator and Alvarez agreed to a modification of the Bellator Contract whereby Bellator "waiv[ed] its [90 day] period of exclusive negotiation" to allow Alvarez "to negotiate a proposed contract with Zuffa, LLC," an entity that does business as "Ultimate Fighting Championship" (hereinafter "Zuffa"). (*Id.* ¶ 9.)

On or about November 28, 2012, Zuffa made an offer to Alvarez (the "Zuffa Offer"). (*Id.* ¶ 10.) Alvarez delivered the Zuffa Offer to Bellator on or about November 28, 2012, giving Bellator until December 18, 2012 to match the Zuffa Offer. (*Id.*) On or about December 13, 2012, Bellator returned a proposed contract to Alvarez claiming to have matched the Zuffa Offer. (*See id.* ¶¶ 11-12, 14.) According to Alvarez, Bellator failed to match the terms of the Zuffa Offer for the following reasons, among others:

- In various provisions of the contract, Bellator substituted its name for that of Zuffa.

- The Zuffa Offer provides for Alvarez's bouts to be broadcast on Fox Network Television, whereas Bellator's proposed contract provides for Alvarez's bouts to be broadcast on Spike TV.

- Bellator's attempt to match the Zuffa Offer's provision providing for the broadcast of a fight on pay-per-view is an impossibility because Bellator "has no history of broadcasting via pay-per-view."

(*See generally id.* ¶ 16.)

To date, Alvarez has not executed either the Zuffa Offer, or Bellator's proposed contract purportedly matching the Zuffa Offer. Consequently, Bellator filed a Complaint on January 3, 2013 alleging (1) a breach of contract claim against Alvarez and (2) a tortious interference claim

2

against fictitious defendants. On January 15, 2013, Alvarez filed a verified answer and counterclaim alleging that "Bellator is . . . using its . . . [right of first refusal] in the nature of a *de facto* covenant not to compete" in an "ethically and morally questionable" way. (CC ¶ 29.) Alvarez's counterclaim asserts the following: (1) a claim for declaratory relief; (2) a claim for injunctive relief; (3) a claim for intentional interference with prospective economic advantage; and (4) a claim for breach of contract. (*See id.* ¶¶ 32-55.)

On the same day that Alvarez filed his answer and counterclaim, he filed an application for an order to show cause seeking to preliminarily enjoin Bellator from interfering with his prospective contract with Zuffa. This Court granted Alvarez's application for an order to show cause, but ultimately denied his application for a preliminary injunction.

Subsequently, on March 8, 2013, Bellator filed the instant motion to dismiss Counts 3 and 4 of Alvarez's counterclaim.

## II. LEGAL STANDARD

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "[c]ourts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Courts are not required to credit bald assertions or legal conclusions draped in the guise of factual allegations. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 555). Thus, a complaint will

survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Determining whether the allegations in a complaint are 'plausible' is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Young v. Speziale*, No. 07-3129, 2009 U.S. Dist. LEXIS 105236, *6-7 (D.N.J. Nov. 10, 2009) (quoting *Iqbal*, 556 U.S. at 679).

### III. DISCUSSION

With this legal framework in mind, the Court will now consider whether it would be appropriate to dismiss (1) Alvarez's claim for tortious interference with prospective economic advantage and (2) Alvarez's breach of contract claim.

    A.    <u>Count 3 of the Counterclaim -- Tortious Interference with Prospective Economic Advantage</u>

Alvarez's tortious interference claim is premised on the allegation that Bellator "intentionally and in bad faith" claimed to have "matched the Zuffa Offer," and "had no ability or intention to perform certain portions" of its purportedly matching offer. (CC ¶ 46.)

To state a claim for tortious interference with prospective economic advantage under New Jersey law, a plaintiff must allege that: "(1) [he had] a reasonable expectation of economic advantage from a prospective contractual or economic relationship; (2) the defendant intentionally and maliciously interfered with the relationship; (3) the interference caused the loss of the expected advantage; and (4) actual damages resulted." *Am. Leistritz Extruder Corp. v. Polymer Concentrates, Inc.*, 363 Fed. App'x. 963, 967 (3d Cir. Feb. 5, 2010) (citing *Varrallo v.*

4

*Hammond Inc.*, 94 F.3d 842, 848 (3d Cir. 1996)); *accord Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751-52 (1989).

Bellator argues that Alvarez's tortious interference claim should be dismissed because (1) it did not act with malice since it was contractually entitled to match the terms of the Zuffa Offer and (2) its act of sending a proposed contract to Alvarez's counsel is privileged, and cannot form the basis for a tortious interference claim. (*See* Br. in Supp. Mot. at 4-11.) The Court will address each of these arguments in turn.

a. Whether Alvarez Has Alleged that Bellator Acted with Malice

New Jersey courts have defined "malice" as "the intentional doing of a wrongful act without justification or excuse." *Printing Mart-Morristown*, 116 N.J. at 756. Bellator argues that Alvarez has not adequately pled the malice element of a tortious interference cause of action because it "was operating in its business self-interest when it submitted the offer which it claims matched the Zuffa offer." (Br. in Supp. Mot. at 7.) In support of its argument, Bellator relies on a number of cases that generally support the proposition that when a party acts legitimately in its own financial interest, said party does not act maliciously. *See, e.g., Cargill Global Trading v. Applied Development Co.*, 706 F. Supp. 2d 563 (D.N.J. 2010); *Sandler v. Lawn-A-Mat Chem. & Equipment Corp.*, 141 N.J. Super. 437, 451-52 (App. Div. 1976); *LaMorte Burns & Co., Inc. v. Walters*, 167 N.J. 285, 307 (2001); *Century 21 Real Estate, LLC v. All Professional Realty*, 2012 WL 3260452 (E.D. Cal. Nov. 16, 2012).

Bellator's reliance on these cases is misplaced because these cases are either trial decisions or decisions addressing summary judgment motions, and do not address the standard for pleading the malice element of a tortious interference claim. *See generally Cargill Global Trading*, 706 F. Supp. 2d 563 (making findings of fact and conclusions of law following bench

trial); *Sandler*, 141 N.J. Super. 437 (reviewing trial judge's factual findings and legal conclusions); *Walters*, 167 N.J. 285 (reviewing trial court's ruling on summary judgment); *Century 21*, 2012 WL 3260452 (deciding motion for summary judgment).

In deciding the instant motion to dismiss, this Court must accept the allegations in Alvarez's counterclaim as true. Alvarez's counterclaim alleges that Bellator acted in bad faith in purporting to match the terms of the Zuffa Offer because it neither had the ability nor willingness to actually match that offer. (*See* CC ¶ 46.) The counterclaim also provides a laundry-list of specific examples of how Bellator allegedly failed to match the Zuffa Offer. (*See id.* ¶ 16.) To provide just one example, Alvarez alleges that while Bellator proposed a contract purporting to match the Zuffa Offer's provision providing Alvarez with a pay-per-view event, Bellator neither has the ability nor the intent to provide such an event. (*See id.* ¶ 16.i, fn.1.)

Accepting the validity of Bellator's argument would require this Court to make a factual determination that Bellator, in fact, had a legitimate business-related justification for proposing a contract to Alvarez purporting to match the Zuffa Offer. It would be inappropriate for this Court to make such a factual determination at this stage. *See, e.g., Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 416 (3d Cir. 2003) (observing that "factual questions . . . cannot be resolved on a 12(b)(6) motion to dismiss.").

    b.    <u>Whether Bellator's Provision of a Proposed Contract to Alvarez's Counsel is Privileged</u>

According to Bellator, its provision of a proposed contract purporting to match the Zuffa Offer cannot form the basis for a tortious interference claim because such "pre-litigation correspondence" is privileged. (Br. in Supp. at 8.) Bellator relies primarily on *N.J. Sports Prods., Inc. v. Bobby Bostick Promotions, LLC*, 405 N.J. Super. 173 (N.J. Super. Ct. 2007) to

argue that pre-litigation correspondence from counsel is always privileged and thus, cannot give rise to a cause of action. This argument lacks merit for two reasons.

First, "in determining the applicability of the state law attorney litigation privilege in this case," this Court "is not bound by a state trial court decision." *See D&D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, No. 03-1026, 2009 U.S. Dist. LEXIS 26630, at *6 (D.N.J. Mar. 30, 2009) (citing *Nat'l Sur. Corp. v. Midland Bank*, 551 F.2d 21, 28 (3d Cir. 1977) (recognizing that in determining questions of state law, decisions of lower state courts are not binding on a federal court)).

Second, even if this Court were inclined to follow the holding of *N.J. Sports Prods.*, that case is distinguishable. The type of communication the court held was privileged in *N.J. Sports Prods.* was a letter from counsel threatening litigation. By contrast, Bellator's proposed contract purporting to match the Zuffa Offer was not correspondence threatening litigation; rather, according to Alvarez's counterclaim, Bellator's proffer of a purportedly matching contract was a bad-faith means of interfering with Alvarez's right to contract with Zuffa. This Court declines to hold that Bellator's act of proffering such a contract is either privileged or categorically immune from liability.

B. <u>Count 4 of the Counterclaim – Breach of Contract</u>

To establish a breach of contract claim under New Jersey law, a plaintiff must show that: (1) the parties entered into a valid contract, (2) the defendant did not perform his or her obligations under the contract, and (3) the plaintiff suffered damages as a result. *See Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div. 2007). A "covenant of good faith and fair dealing is implied in every contract." *See Wilson v. Amerada Hess Corp.*, 168 N.J. 236 (2001) (citation omitted). This covenant requires that no party to a contract "shall do anything which will have

the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 254 (App. Div. 2002) (quotation marks and citation omitted). To prevail on a breach of contract claim grounded on an alleged breach of the implied covenant of good faith and fair dealing, a plaintiff must establish that the defendant acted with a "bad motive or intention." *See Wilson*, 168 N.J. at 251.

Bellator argues that Alvarez's breach of contract claim must be dismissed because the counterclaim fails to specify which contract Bellator allegedly breached. (*See* Br. in Supp. Mot. at 12.) Bellator also asserts that to the extent that Alvarez's breach of contract claim is premised on the proffer of a contract purportedly matching the Zuffa Offer, that claim must fail because Bellator's proffer of such a purportedly matching contract is privileged pre-litigation correspondence. (*Id.* at 14.) For the same reasons discussed in Section III.A.b, *supra*, Bellator's privilege argument fails.

Additionally, contrary to Bellator's assertion, Alvarez has specifically identified the contract that Bellator allegedly breached as the one into which the parties entered on October 28, 2008. (*See* CC ¶ 7.) Thus, Bellator's suggestion that the counterclaim fails to specify which contract it allegedly breached is without merit. As Alvarez has adequately alleged that Bellator breached the implied covenant of good faith and fair dealing by proffering a contract purporting to match the Zuffa Offer in spite of neither having the ability nor the willingness to actually match that offer, (*see, e.g.*, CC ¶¶ 29, 46), this Court declines to dismiss Alvarez's breach of contract claim.

Accordingly, for the foregoing reasons,

**IT IS** on this __16__ day of April, 2013

**ORDERED** that Bellator's motion to dismiss Alvarez's counterclaim is **denied**.

**SO ORDERED.**

_____
JOSE L. LINARES
United States District Judge